WILLIAM AMES, Trustee, *et al.*, FOR AN OPINION.

PROVIDENCE—APRIL 18, 1900.

PRESENT : Matteson, C. J., Stiness and Tillinghast, JJ.

(1)  *Construction of Wills.    Trusts.    Release from Debts.*

A testatrix devised her estate to trustees to pay the income thereof to her son for life, and upon his death to convey to his issue in fee or absolutely the body of the estate disencumbered of the trust ; and after reciting that her son was deeply insolvent, and that her purpose was to provide for his support, provided in a codicil that "if my son shall by discharge from his creditors, or by force of any bankrupt act of the United States at any time

hereafter in force, be released from the debts with which he is encumbered, then this trust with regard to the portion of my property to which my son shall be entitled, to the extent of the interest or title of my son so released, shall cease and be determined, and my trustees shall convey to my son so released his portion or estate in my property in conformity to my will, to be held and enjoyed by him released free from all control and trust whatsoever." The son died, leaving issue. Prior to his death he paid all the debts referred to in the will for which he was liable, except such as were barred by the statute of limitations :—

*Held,* that, the purpose of the testatrix being to keep the property from vesting in the beneficiary until such time as he was freed from liability to the claims of creditors, the beneficiary, by paying the debts for which he could be held, was thereby discharged from those debts ; and to the debts barred by the statute of limitations, if suit were brought, he could plead the statute and thereby be released from liability, and that he thereupon became entitled to a conveyance of the trust estate to himself.

(2)  *Construction of Wills.    Nature of Estate.*

*Held;* further, that, under the terms of the codicil, from the discharge of the beneficiary from his debts he took an absolute estate in fee in the real estate, and the personal property absolutely.

(3)  *Trusts.    Dower.*

*Held,* further, that, under the statute giving dower to widows in trust estates, the widow of the beneficiary was entitled to dower.

BILL IN EQUITY for an opinion.    Heard on bill, answer, and agreed statement of facts.

MATTESON, C. J.    This is a case stated for an opinion. The questions arise on the will of Phebe Allen, a resident of Providence, who died in 1865.    The provisions of the will material to the present inquiries are as follows :

The testatrix devised her real and personal estate to a trustee, in trust :

1. To pay the income to her husband for life, and on his death, should he survive her sons Philip and Charles B. and the issue of each, to dispose of the estate as he should by will appoint.

2. On the death of her husband, leaving the sons or either, or the issue of either or both, to pay the income in equal shares to the sons during their joint lives, and on the death of either without issue, living the other, to pay to the survivor the

whole income for life, and on his death to convey to his issue in fee or absolutely the body of the estate, disencumbered of the trust, in such parts and proportions as such issue would have been entitled to the same as heirs at law and next of kin of the surviving son had the estate been vested in him in fee or absolutely. But if either son should die leaving issue, living the other, to convey to such issue, in fee or absolutely, one-half of the estate disencumbered of the trust, in such parts and proportions as such issue would have been entitled to the same as heirs and next of kin of such deceased son had such half of the estate been vested in him in fee or absolutely ; paying over to the surviving son the income of the other half for life, and on his death conveying such other half in fee or absolutely, in manner and proportion as aforesaid, to any issue which he may leave behind him ; and for want of such issue, in like manner and proportion to any issue of his brother then living.

4. After reciting that the testatrix's husband and sons are deeply insolvent, and that her purpose was to provide for their aliment and support, the will provides that if either of them alienate his interest in the income, or if the same be disposed of under any proceeding to compel him to pay his debts, the right of the husband or son so parting with his interest shall cease, and the trustee shall pay over the income to the persons who would be entitled to the same under the will if the one so forfeiting were dead. Furthermore, and to the same end, if the income should be inadequate to the support of any one of the husband or sons, the trustee might apply the principal to such support.

The will was executed August 15, 1860. On August 26, 1864, the testatrix executed a codicil as follows :

"If my husband or either of my sons shall, by discharge from their creditors, or by force of any bankrupt act of the United States at any time hereafter in force, be released from the debts with which they or either of them are or is now encumbered, then my will is that this trust with regard to the por-

tion of my property to which my husband or either of my said sons so released shall unforfeited be entitled under this my will, to the extent of the interest and title of my husband or sons so released, cease and be determined, and my trustee shall convey to my husband or either of my sons so released, his portion or estate in my said property in conformity to my will, to be held and enjoyed by him or them released free from all control and trust whatsoever."

The testatrix's husband survived her, and died in 1865. The son Philip died in 1873, without issue. The son Charles died in 1899, leaving issue. Charles paid all the debts referred to in the will for which he was liable, except such as were barred by the statute of limitations.

The questions on which the opinion of the court is asked are :

1. Did the payment of his debts by Charles, except such as were barred by the statute of limitations, terminate the trusts of the will so that he became entitled to a conveyance of the estate to him from the trustee under the provisions of the codicil ?

2. If the trusts were so terminated, what estate did he take in the real and personal property held under the trusts ?

3. If the trusts created by the will ceased and determined during the life-time of Charles, did Mary W. Allen, his widow, acquire a right to dower in the trust property or any part thereof ?

It is argued that the payment of his debts by Charles, *except such as were barred by the statute of limitations*, did not work a termination of the trusts under the codicil, which makes their determination depend on the release of the *cestuis que trust* from their debts by a discharge from their creditors, or by force of a bankrupt act of the United States. It is claimed that there has been no compliance by Charles with the provisions of the codicil, since it does not appear that he has been discharged from his debts by operation of a bankrupt law, nor from his debts barred by the statute of limita-

tions, since he has not pleaded this statute to any of his debts and been thereby freed from such debts.

(1)    We think that this is insisting on too great strictness in the construction of the codicil.   The purpose of the testatrix was merely to keep the property from vesting in the beneficiaries until such time as they could safely have the absolute enjoyment of it ; or, in other words, until they were freed from liability to the claims of creditors.   Charles, by paying the debts for which he could be held, was thereby discharged from those debts ; and to the debts barred by the statute of limitations, if suit should be brought on them, he could plead the statute and thereby be released from liability.   If he had been discharged by virtue of a bankrupt act, it would have been equally necessary for him to have pleaded his discharge in order to defeat his liability ; so that the objection that he never pleaded the statute of limitations, and therefore was not freed from the debts barred by it, could as well have been urged if he had been discharged from his debts under the bankrupt act, since he would have been equally liable to suit and to have judgment rendered against him on them unless he had pleaded his discharge.

(2)    Assuming that the trusts were terminated by the payment by Charles of his debts, except such as were barred by the statute of limitations, it is argued further that all that Charles was entitled to have conveyed to him under the codicil was a life-estate, since the trust under the will is to pay the rents, profits, and income of the estate to the surviving son during his natural life, and on his death to convey to his lawful issue, in fee or absolutely, the body of the estate disencumbered of the trusts, and under the codicil the trustee could only convey to the surviving son the estate given in the will.

We do not, however, take this view of the scope of the codicil.   As we have already stated, it is evident that the purpose of the testatrix was to protect her husband and sons in the enjoyment of her property from the claims of creditors ; not to deprive them of its enjoyment and control after the necessity for so doing had ceased.   We are of the opinion,

therefore, that when by the codicil the testatrix directs the trustee, after her husband and sons had been released from the claims of creditors, to convey to him or them, or either of them, his or their portion or portions or estate in the property, in conformity to the will, " to be held and enjoyed by him or them released, free from all control and trust whatsoever," she intended that the beneficiary should take not a life-estate, but an absolute estate in fee in the real property, and the personal property absolutely. The use of the clause which we have quoted strongly militates against the idea that the beneficiary in such case was merely to take a life-estate. It is scarcely conceivable that the testatrix should have gone to the trouble of making a codicil unless she had intended that the beneficiary should take something more than a life-estate ; for the beneficiary was already entitled to that under the will, and if she had intended that the body of the estate should go to the issue of the surviving son, that end could better have been secured by having it retained by a trustee than by a conveyance to the life-tenant.

Our opinion is that Charles B. Allen, by the payment of his debts, except such as were barred by the statute of limitations, became entitled to a conveyance of the trust estate to himself ; and that from the time of such payment, and the barring of his debts not paid by the statute of limitations, his father and brother having died, the trustee held the estate solely for his benefit.

(3) It follows that, under the statute giving dower in trust estates, Mary W. Allen, his widow, is entitled to dower.

*Samuel Ames, Edwards & Angell, James M. Ripley, and John Henshaw,* for parties.