IN RE DEWEY'S ESTATE.
ANDREWS et al. v. TUTTLE.

No. 2620.   Decided August 14, 1914 (143 Pac. 124).

1. WILLS—CREATION OF TRUST—LANGUAGE. A will need use no particular words to create a trust, but it is enough that, from all the language in it, a trust is fairly implied. (Page 101.)

2. WILLS—CREATION OF TRUST. A will which gives to D. and M. $500 each, or if there be not enough to pay both legacies, then to each one-half of what is available, directs that if there be a surplus after paying such legacies in full, $500, or such portion thereof as said surplus will pay, be paid to T., and gives "all the rest, residue and remainder" to T., with provision, "It is my desire that he shall distribute the same * * * among my nephews and nieces," creates a trust as to the residue, to be distributed among testatrix's nieces and nephews, other than T.  (Page 104.)

3. TRUSTS—CREATION—CERTAINTY—SUBJECT-MATTER. A bequest in trust of "all the rest, residue and remainder of my property of every kind and nature whatsoever" is not uncertain as to the subject-matter. (Page 105.)

4. TRUSTS—CREATION—CERTAINTY—OBJECTS OF TRUST. The objects of a trust, as expressed by a will, "my nephews and nieces," are not uncertain. (Page 106.)

5. TRUSTS—VALIDITY—DISCRETION OF TRUSTEE. That the will, giving property in trust to be distributed among testatrix's nephews and nieces, gives the trustee discretion as to which of them he shall distribute it among, and in what proportions, does not invalidate the trust. (Page 106.)

6. WILLS—TRUSTS—TRUSTEE AS BENEFICIARY. In the absence of clear and express terms permitting it, a nephew, to whom testatrix gives property in trust to distribute among her nephews and nieces, cannot participate in the distribution, though he is given discretion as to selecting the beneficiaries, and elects in favor of himself. (Page 107.)

7. WILLS—DISTRIBUTION OF PROPERTY—DISCRETION OF TRUSTEE. The trustee not having exercised the discretion, given by the will, to determine to which of the testatrix's nephews and nieces, and in what proportion, the property should be distributed, it will be distributed among them equally; no rule being laid down by the will to govern the trustee. (Page 108.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong*, Judge.

In the matter of the estate of Maria Loomis Dewey, deceased. Contest by Alma Andrews and others against Ammon Tuttle, administrator, as to distribution.

Judgment sustaining demurrer to objections and order distributing estate. Objectors appeal.

REVERSED and remanded with directions.

*Elias Hanson, M. E. Wilson* and *E. A. Walton* for appellants.

*Rawlins, Ray & Rawlins* and *Snyder & Snyder* for respondent.

FRICK, J.

The controversy on this appeal arose upon a petition filed in the probate division of the district court of Salt Lake County for final distribution of the estate of Maria Loomis Dewey, deceased. One Alma Andrews, a nephew, and Lavenia McComb and Esmeralda McKell, nieces of said decedent, filed objections to the final distribution as prayed for in the petition aforesaid, and asked that certain portions of said estate be distributed to them. The court sustained a general demurrer to the objections filed as aforesaid, and ordered said estate distributed as prayed for in said petition, and entered judgment accordingly, from which the objectors, hereinafter called appellants, prosecute this appeal.

Maria Loomis Dewey died, leaving a last will and testament. She also left surviving her quite a number of collateral heirs, all of whom are parties to this proceeding. Whether the judgment or decree of distribution appealed from should be affirmed or reversed depends upon the construction that should be given to certain portions of the decedent's will. The will was duly admitted to probate, and the Hubbard Tuttle, Sr., mentioned in the will, hereinafter designated trustee, was duly appointed executor. Said trustee died before final settlement and distribution of the estate, and one Ammon Tuttle, son of the trustee, was duly appointed administrator with the will annexed, by whom the estate is represented in this controversy.

The testatrix, after directing the payment of her debts and other expenses, made the following bequests:

"2nd. That all debts and dues and demands of whatsoever kind or nature, due or to become due to me, shall be collected and converted into money; and after all such debts as are collectible shall have been collected, and after all my debts, and the expenses of the administration of my estate are paid, I hereby request and direct that the following legacies shall be paid out of the remaining proceeds of my estate, to-wit: First. To my niece Luella Dewey, the sum of $500. Second. To my niece Esmeralda McKell, the sum of $500. I further direct that if there shall not be sufficient funds to pay the above bequests in full, that the amount

applicable for that purpose shall be divided pro rata among said legatees; but if there should still remain a surplus after the payment of the aforesaid legacies in full, I request that the sum of $500 or such portion thereof as said surplus, if any, will pay, to be paid to Hubbard Tuttle, Sr. I further direct and request that my Paisley shall be given to Nellie C. Shurtleff, and that my fur cape be given to Ida Wooley. All the rest, residue and remainder of my property of every kind and nature whatsoever, if any, which remain after paying and discharging all the debts, bequests, legacies, and obligations hereinbefore mentioned and provided for, I hereby give, devise and bequeath to the said Hubbard Tuttle, Sr. It is my desire that he shall distribute the same, or the proceeds thereof, among my nephews and nieces, and to such of them, and in such proportions, as he shall deem just and proper, and his decision upon such matters shall be final, conclusive and binding upon all parties.''

The testatrix then nominated said trustee as executor.

The administrator, hereinafter called respondent, contends that by the terms of said will the testatrix devised and bequeathed the whole residue and remainder of said estate to said trustee to have and to hold in his own right, while the appellants contend that said residue and remainder was given to said trustee in trust to be by him distributed as in said will directed. The question we must determine, therefore, is whether the contention of respondent or that of appellants should prevail.

It is a cardinal principle or canon of construction that the intention of the testator must prevail if such intention, when ascertained, is not contrary to the law and the testator has complied with the forms of law in the execution of his will. In this case no question respecting the validity of the will arises, since it was duly proved and no one contested the same. The question, therefore, is, Was it the intention of the testatrix to give the residue of said estate to said trustee in his own right, or did she intend to give it to him in trust for the purposes named in the will? It could subserve no useful purpose for us to attempt a review of the numerous cases, or even to attempt to reconcile

them, upon the question of what at times are called implied
and at other times precatory trusts. It must suffice at this
time to call attention to some of the general principles and
rules that have been laid down and applied by the courts
upon that subject. One rule, which we think may be said
to be of universal application, is to the effect that no par-
ticular words are necessary to create a trust, and that if
from all the language used by the testator in his will a trust
is fairly implied, the courts will enforce the same. This rule
is well stated in 1 Perry on Trusts and Trustees (6th Ed.),
section 112, in the following words:

"Implied trusts are those that arise when trusts are not directly
or expressly declared in terms, but the courts, from the whole
transaction and the words used, *imply* or infer that it was the
intention of the parties to create a trust. Courts seek for the
intention of the parties, however informal or obscure the language
may be; and, if a trust can fairly be implied from the language
used as the intention of the parties, the intention will be executed
through the medium of a trust. Implied trusts may arise out of
agreements and settlements *inter vivos* where there is a sufficient
consideration; but they more frequently arise from the construction
of wills where a consideration is implied. In Pennsylvania, such
words as 'my wish is,' 'my further request is,' or other words
merely expressive of a desire, recommendation, or confidence, are
not sufficient to convert a devise or bequest into a trust. But the
general rule is that if a testator make an absolute gift to one
person in his will, and accompany the gift with words expressing
a 'belief,' 'desire,' 'will,' 'request,' 'will and desire,' or, if he 'will
and declare,' 'wish and request,' 'wish and desire,' 'entreat,' 'most
heartily beseech,' 'order and direct,' 'authorize and empower,'
'recommend,' 'hope,' 'do not doubt,' 'be well assured,' 'confide,' 'have
the fullest confidence,' 'trust and confide,' 'have full assurance and
confident hope'; or, if he make the gift 'under the firm conviction,'
or 'well knowing'; or, if he use the expression, 'of course the legatee
will give,' or, 'in consideration that the legatee has promised to
give'—in these and similar cases courts will consider the intention
of the testator as manifestly implied, and they will carry the
intention into effect by declaring the donee or first taker to be a
trustee for those whom the donor intended to benefit."

In 1 Jarman on Wills (6th Ed.), star page 355, it is said:

"For technical language, of course, is not necessary to create
a trust. It is enough that the intention is apparent."

In Schouler on Wills (2d Ed.), section 263, the author says:

"But a 'will' is something imperative even though the testator should choose to employ some softer word to denote it. Doubtless his true intention, as the context may indicate, will operate in the details of the disposition; as in determining whether a party named in the will shall absolutely or at his own discretion perform a certain duty or appropriate a certain fund. But, generally speaking, where property is given by testament to some person, who is recommended, requested, or wished, to dispose of it after a certain manner, this wish, request, or recommendation is commonly considered imperative and equivalent to creating a trust. And as for the will, the testamentary disposition itself, its natural operation, is absolute and imperative, though never so gently expressed; for such an instrument as a will, whose sanction rests upon the arbitrary discretion of a court or surviving individual, which prays instead of declaring a devolution of title, is almost unheard of, and never to be favored by construction."

The editors of Hill on Trustees (4th Am. Ed. 73), after an examination of the American and English cases, have deduced the following rules upon the subject now under discussion, to-wit:

"1. Precatory words in a will, equally with direct fiduciary expressions, will create a trust; the wish of a testator, like the request of a sovereign, is equivalent to a command.

"2. Discretionary expressions, which leave the application or nonapplication of the subject of the devise to the objects contemplated by the testator entirely to the caprice of the devisee, will prevent a trust from attaching; but a mere discretion in regard to the method of application of the subject, or the selection of the object, will not be inconsistent with a trust.

"3. Precatory words will not be construed to confer an absolute gift on the first taker, merely because of failure or uncertainty in the object or subject of the devise.

"4. But failure or uncertainty will be an element to guide in construing words of doubtful significancy adversely to a trust."

See 1 Perry on Trust and Trustees, pp. 161-162. See, also, upon this subject *Warner* v. *Bates*, 98 Mass. 274; *Colton* v. *Colton*, 127 U. S. 300; 8 Sup. Ct. 1164; 32 L. Ed. 138; *Knox* v. *Knox*, 59 Wis. 172; 18 N. W. 155; 48 Am. Rep. 487; *Williams* v. *McKinney*, 34 Kan. 514; 9 Pac. 265; *Read* v. *Patterson*, 44 N. J. Eq. 215-219; 14 Atl. 490; 6 Am. St. Rep. 87; *Lippincott* v. *Ridgway*, 10 N. J. Eq. 164; *Cameron* v.

*Crowley,* 72 N. J. Eq. 684; 65 Atl. 875; *Degman* v. *Degman,* 98 Ky. 717; 34 S. W. 523; *Jones* v. *Jones,* 8 Misc. Rep. 660; 30 N. Y. Supp. 177. Numerous other cases to the same effect could be cited, but the foregoing are quite sufficient to illustrate the principle.

There are likewise a number of cases wherein a stricter rule respecting the creation of implied trusts is laid down, but it is not necessary to refer to those cases here. A large number of cases will be found collated in the briefs of counsel. Indeed, many of the cases cited by counsel for appellant are in entire harmony with those cited above.

Recurring now to the provisions of the will and applying them to the rules laid down by the foregoing authorities, it seems clear to us that the testatrix must be deemed to have intended to give "all the rest, residue and remainder" of her property to the trustee to be by him distributed among the nephews and nieces of the deceased (not including himself), or "to such of them and in such proportions as he shall deem just and proper." Looking to the other bequests in the will, we find two specific bequests, namely, one for $500 to Luella Dewey and another for the same amount to Esmeralda McKell. Those bequests were, however, conditioned upon whether there would be sufficient money to pay said sums in full. If there were not sufficient money to do so, then each one of the devisees is to receive one-half of the amount of the estate, whatever it might be. It is then provided that in case there should be a surplus over and above the two specific bequests, such surplus should go to the trustee, provided the surplus does not exceed the sum of $500. The trustee, therefore, was not to receive the entire surplus, or what would have been the residue or remainder of the estate, but he was to receive only $500 thereof. That such was the intention of the testatrix is as clear as language could make it. The testatrix, therefore, desired to give, and did give, to the trustee the residue of her property if such residue did not exceed the sum of $500, and, if it did exceed that sum, then such residue was not to go to him, at least not in his own right. This, too, is clear, for if the testatrix had intended to give him the whole residue,

she would not have limited the amount to $500, but would have given him the whole residue of the estate. If it be held that it was the intention of the testatrix to give the trustee the whole residue of her property, then the bequest in which she expresses the wish or desire that he distribute the residue or remainder among her nephews and nieces must be regarded as mere surplusage and without any force or effect whatever. It was needless to limit the trustee's share to $500 if it was intended that he should have the whole residue, whatever it might be; but if he was not to have such residue in his own right, then it was necessary to place a limit on the amount he should have and make provision for any residue that might still remain. This is precisely what the testatrix did by making the bequest in the form it was made. It is quite true that if we stop at the end of the first sentence of the bequest wherein the residue of the property is disposed of, the language is sufficient to pass the whole residue to the trustee, but we cannot stop at that point for the reason that the testatrix did not do so. She proceeded further, and by what she said she created a trust. Again, as we have already pointed out, if she did not intend to create a trust, she would not have made the bequest of the residue of her property in the form it was made, but would have given the trustee all the residue in the preceding paragraph of the will.

But it is contended with much vigor that no trust was created either in fact or in law, because both the subject-matter and the objects thereof are not expressed with that degree of certainty which would authorize or justify the enforcement of the trust by a court of equity. We cannot yield assent to this contention. What is the subject-matter of the trust in question? It is expressed in    3 the will as "all the rest, residue and remainder of my property of every kind and nature whatsoever." Could the subject-matter of a bequest be much more certain and explicit? All that is necessary to make the bequest absolutely certain is to ascertain the kind, character, and amount of the testatrix's property after paying the debts and expenses and the three bequests of $500 each. If such a bequest is

uncertain, then every residuary bequest or devise is uncertain. We need not dwell longer on this phase of the case.

It is said, however, that the objects of the trust are uncertain. Clearly, this is also untenable. The objects expressed by the testatrix are "my nephews and nieces." All that is left to be done is to ascertain who are her nephews and nieces. What heirs or devisees come within a certain class named, either in a will or a statute, is a matter which must be, and constantly is, determined by the courts. There is therefore no legal obstacle in that regard.

It is, however, insisted that the vesting of the trustee with a power of discretion to determine to which ones of the nephews and nieces he would give and the amount he would set apart to each vitiates the trust or makes it unenforceable because of uncertainty. The courts have passed upon like or similar provisions in wills many times, and have found no difficulty in enforcing them. It is not an insuperable objection that the trustee be invested with discretion or be given the power to select one or more beneficiaries from a class named in the will, or even to determine the amount the beneficiary selected by him should receive so long as the trustee is required to divide the property to the class indicated by the testator. The general rule in that regard is stated by the Supreme Court of the United States in *Colton* v. *Colton, supra,* in the following words:

"On the one hand, the words may be merely those of suggestion, counsel, or advice, intended only to influence, and not to take away, the discretion of the legatee growing out of his right to use and dispose of the property given as his own. On the other hand, the language employed may be imperative in fact, though not in form, conveying the intention of the testator in terms equivalent to a command, and leaving to the legatee no discretion to defeat his wishes, although there may be a discretion to accomplish them by a choice of methods, or even to define and limit the extent of the interest conferred upon his beneficiary."

In referring to the class of trusts we are now discussing, that is, the class in which a power of exercising a discretion is vested in the trustee by the testator respecting the selec-

tion of the particular objects of the trust from a class named, the author, in 2 Beach on Trusts, section 432, says:

"In this class of trusts the discretionary power of the trustees is limited to the selection of individuals as the objects of the trust from the class indicated, or the distribution of the estate amongst the objects of the trust. Where property is left in trust to a class of individuals, as the children, or the nephews and nieces of the testator, and the trustees are authorized to appoint to one or more, as they shall see fit, from this class, and the trust is administered, the individuals appointed will take the estate to the exclusion of all the other individuals of the class, and the rule will apply where the trustees are empowered to determine the relative proportions to be received by the individuals, or to fix the time and manner in which the shares of the estate shall be distributed. But where, for any reason, the discretionary power is not exercised, the entire class of the objects of the trust will be entitled to the property, and they will share and share alike."

In *Brosseau* v. *Dore*, 35 Can. Sup. Ct. 205, it is said:

"A devise in a will directing the distribution of the residue of the testator's estate among his brothers and sisters or nephews and nieces who should be most in need of it, at the discretion of the trustee named therein, is valid, and confers absolute power upon the trustees of selecting beneficiaries from the classes of persons mentioned."

See, also, upon this question the New Jersey cases above cited.

Under the authorities there can be no serious doubt concerning the validity of the trust in the form in which it is stated in the will in question. It is clear, therefore, that the district court erred in distributing the residue of the estate in question to the heirs of the trustee. As we read the record, the distribution was made in that way for the reason that the district court held that under the provisions of the will the trustee was given the whole amount of the residue of the estate in question in his own right, and therefore his heirs were entitled to the same. The court may, perhaps, also have been influenced in making the decision by the fact that the trustee, before his death, had filed what he called an election or distribution of said estate,

in which he elected to distribute the residue of said estate to himself as a nephew of the testatrix.   If our conclusions so far are correct, then the so-called election or distribution made by the trustee is clearly invalid:   (1)  Because he was entitled to no part of said residue in his own right; and (2) because he was clearly excluded from the class of persons to whom he was required to distribute the residue.   This result would follow under the authorities cited, as well as under every rule of construction.   We do not mean that under no circumstances could a trustee or a donee under a trust like the one in question here be a beneficiary, but what we do hold is that such a conclusion is not permissible unless the trustee or donee is by the testator permitted to participate in the distribution in clear and express terms.   If, however, he is included within that class, he cannot draw to himself more than his pro rata share of the estate.   Under the circumstances of this case we hold that the trustee was not entitled to any part of the estate in question as a devisee under the will, or otherwise, except the $500 mentioned therein and under the circumstances there set forth.   It is only fair to counsel for appellant to state that they do not claim that the trustee was entitled to the residue as a nephew, but their contention is that he was entitled to it as the residuary legatee.

This brings us to the question of to whom and in what proportions the residue of the estate in question should be distributed.   Where the testator has invested the trustee with discretion to select the beneficiary or beneficiaries        7 from a certain class and to determine the amount that should go to each, and in case the trustee has honestly and in good faith exercised the discretion by making a selection and by fixing the amounts, the courts will not interfere with what the trustee has done in that regard; but in case he has not complied with the terms of the trust in making a distribution, or has entirely failed to make any distribution, the courts, at the instance of an interested party in a proper proceeding, will make a distribution in such manner and upon such terms and conditions as may be equitable and as will best effectuate the purpose and intention of the testator.

In 1 Perry on Trusts and Trustees (6th Ed.), section 255, it is said:

"Generally, if the power is left unexecuted by the donee, the court will execute it as a trust, by dividing the fund equally among the objects or persons in favor of whom it was given, or from whom the selection might have been made, on the ground that *equality is equity*. But if the donor of the power lays down any rule by which the *donee* is to be governed in his selection and distribution of the fund, it is said the court will place itself in the position of the trustee."

In 1 Beach on Trusts and Trustees, section 263, the rule is stated thus:

"Where a power is of such a character that the donee is authorized to dispose of the property among the individuals of a designated class, and is clothed with some discretion in regard to the manner of the distribution, equity will not interfere with his execution of the power. But if the donee for any reason fails to act and the property is not divided, equity will interpose in favor of the beneficiaries by treating it as a power in trust and enforcing its execution. In such cases the distribution by the court will be to all the individuals of the class designated and in equal sums."

See the quotation from 2 Beach on Trusts and Trustees, *supra*. See, also, *Cameron* v. *Crowley, supra,* where the doctrine is illustrated and applied. In the last case referred to the trustee attempted to make a distribution which was contrary to the provisions of the will, and the court held it invalid and ordered a distribution in consonance with the rule just stated.

In the case at bar the trustee, under the provisions of the will, could have executed the trust by making an equal division of the residue of the estate among all of the nephews and nieces, excluding himself, and therefore a court of equity may do so.

Before concluding this opinion we desire to say that we have not overlooked the argument of counsel for respondent in which they vigorously insist that to hold that the language used by the testatrix in this case created a trust will establish a dangerous precedent, in that it may result in declaring all words of entreaty or desire as trusts, and thus

hamper testators in making certain requests in connection with their bequests which are not intended as trusts or limitations. We do not share counsel's apprehensions in that regard. The mere fact that it at times may be somewhat difficult for the courts to determine the meaning or intention of the testator from certain words or phrases used by him is no reason why they should impose rigorous rules upon testators in their use of language. While the Legislature might perhaps establish certain rules in that regard, the courts have no such power; and the exercise of the power by the Legislature would, in my judgment, be unwise. Testators, within certain limits, should be as free to choose their words as they are to select the objects of their bounty, and all that can be required of them in that regard is that they use such language in making their bequests and in giving their directions as will make their intentions and purposes reasonably clear to those whose duty it may become to pass upon and determine such purposes and intentions. It is the duty of courts to ascertain the intention of the testator from such language as he may have used and to follow and enforce that intention at all hazards. It is the will of the testator and not the wish of the heir that must govern. It no doubt would be easier for the courts if it were required that all trusts must be expressed in technical language, yet we very much doubt the wisdom of enforcing such a rule. In disposing of their own men must be left as free as possible to choose their own means and methods, so long as they devote their property to lawful purposes and execute their wills in accordance with the prescribed forms of law. We have no doubt whatever that in making the will in question it was the purpose and intention of the testatrix to dispose of her property by giving $500 to Luella Dewey, $500 to Esmeralda McKell, and $500 to Hubbard Tuttle, Sr., if there was sufficient left for the last bequest, and, if not, then what was left, if any, but in no event should his bequest exceed the sum of $500. Neither do we entertain any doubt that it was the intention of the testatrix to bequeath "all the rest, residue, and remainder" of her property to said Hubbard Tuttle, Sr., in trust for the use and benefit of her other nephews

and nieces (not including himself), or to such of them as he might select from the whole class. This being the will of the testatrix, it is the duty of the courts to execute it as made, unless some one or more of the beneficiaries expressly waive or have waived their share or a part thereof for the benefit of others.

There are some other matters relating to the collection of some notes and the preservation of some of the property of the estate referred to in appellants' objections. These matters we do not consider, since the district court has full power and no doubt will exercise it if necessary to require the administrator to collect and account for all the property belonging to the estate and produce it when required to do so.

It is therefore ordered that the judgment of the district court of Salt Lake County be, and the same hereby is, reversed and vacated; that this case be remanded to said district court, with directions to enter a decree of distribution of the estate in accordance with the views herein expressed. Costs upon this appeal to be paid out of the assets of the estate.

McCARTY, C. J., and STRAUP, J., concur.