CARSON ESTATE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47444, 53489. Promulgated November 15, 1934.

*Harvey J. Stevenson, C. P. A.*, and *Joseph D. Brady, Esq.*, for the petitioner.

*Clay C. Holmes, Esq.*, for the respondent.

### OPINION.

LEECH: These consolidated proceedings seek redetermination of income tax deficiencies in the amounts of $2,086.02 for the year 1926, $1,780.08 for the year 1927, and $1,815.31 for the year 1928. The total deficiencies for 1926 and 1927 are not in controversy.

The facts are stipulated. A rather full résumé of them follows:

Petitioner is a California corporation It acquired certain certificates of ownership from Municipal Bond Co., hereinafter referred to as the corporation.

The form of ownership certificate issued by the corporation provides that the corporation " does hereby sell and transfer to the purchaser of this certificate all of its rights, title and interest in Municipal Improvement Bonds issued under the special assessment laws of

the State of California ", of a specified unpaid face value; that the corporation certifies that such bonds and other like bonds are deposited with a named trustee to hold the same under a trust agreement made a part of the certificate as though incorporated therein; that the bearer or registered holder of the certificate " is entitled to participate in the proceeds and avails of such bonds, so deposited, to the extent of the principal sum of _____ Dollars, payable from such proceeds and avails on the _____ day of _____ 19__, with interest on said sum from the date hereof at the rate of __ Per Cent (__%) per annum, payable semi-annually on the first days of _____ and _____ in each year upon surrender of the coupons hereto attached, as they severally mature "; that the owner of the certificate " is entitled at any time upon demand and surrender of this certificate, together with its unmatured coupons, to said trustee, to receive bonds of unpaid face value equal to the principal sum herein mentioned, the accrued interest to be adjusted as of date of delivery on both this certificate and the bonds so delivered "; that the certificate owner " releases and waives " all interest or other sums collected by the trustee upon such bonds, in excess of the principal sum and interest at the rate specified in the certificate. The corporation has deposited with the trustee, unpaid face value bonds equal to 110 percent of the principal sum stated in the certificate, " for the purpose of better securing the distribution of the proceeds and avails of such bonds "; that the corporation covenants " that the principal and interest to become due upon said bonds, when and as the same matures, will be paid, such covenant to continue as long as such bonds remain on deposit with said Trustee." The form of the coupon attached to the certificate provides that the certificate owner " Is ENTITLED TO RECEIVE _____ Dollars from the avails of Bonds on deposit with said Bank in Trust No. __, according to the terms of such Trust, and the Undersigned (the corporation) covenants that the avails from such Bonds will be paid." The form of the trustee's certificate provides that " The undersigned hereby certifies that the within certificate and coupons attached, is one of the certificates executed by Municipal Bond Company under an Agreement of Trust with this Corporation, dated _____ " and further, that there has been deposited with it, bonds of the designated character and of the unpaid face value of 110 percent of the principal sum stated in the certificate.

The trust agreement sets out that the corporation desires to sell municipal improvement bonds which it owns or may acquire; that such bonds vary in amounts and dates of maturity; that the corporation, instead of selling specific bonds, desires to sell to the purchaser an interest in such bonds in even sums such as $100 or mul-

tiples thereof, and reinvesting for such purchaser the principal of such bonds as they mature to the end that the purchaser shall have his money invested in such bonds for a definite period such as five or ten years; that to accomplish such purpose, the corporation desires to deposit such bonds with the trustee " for the use and benefit of such person as may purchase an interest therein "; that the corporation desires to issue the above-mentioned certificates of ownership to such purchasers; and, further, that " in consideration of the premises, the said Trustee hereby agrees to accept from said Corporation, such bonds and to hold the same for the benefit of the holders of such certificates, in trust upon the terms and conditions and for the purposes herein set forth." The terms and conditions of the trust, the duties and obligations of the trustee and the corporation, and also the rights of the parties, including the purchaser, are set forth in great detail. Article II provides for the deposit of bonds with the trustee and section 3 thereof provides, " Said Corporation shall transfer, assign and set over to said Trustee the absolute title to said bonds, to hold in accordance with the provisions of this Trust Agreement, and shall execute any and all transfers, assignments or other instruments necessary to pass the title in said bonds to said Trustee." Article III provides that the corporation may withdraw any of the bonds upon delivery to the trustee of an equal amount of unpaid face value of bonds of the same character, provided the aggregate interest on the substituted bonds shall equal or exceed the interest specified in the certificates. Article IV provides that the trustee shall collect or cause to be collected, interest on the bonds for the benefit of the trust; that the corporation agrees to purchase for cash at face value any interest coupons due and uncollected; that the trustee shall sell to the corporation all installment coupons of principal falling due and maturing serial bonds, for which the corporation agrees to deliver to the trustee other bonds of the same character of an unpaid face value equal to the coupons and maturing bonds, such other bonds to be held for the benefit of the certificate holders; and that the purpose and intent is that trustee shall collect the interest accruing on all bonds for the benefit of the trust and as the bonds mature the principal to be immediately reinvested in like bonds for the benefit of the trust. Article V provides that out of moneys received from the collection or sale of interest coupons on the municipal bonds, the trustee shall pay to the certificate owners the interest specified therein and, after deducting the trustee's charges, pay the excess to the corporation as income on the excess 10 percent of bonds deposited and as compensation to the corporation for selling ownership certificates and collecting interest and principal for the trustee. The corporation is enti-

tled to any bonus or penalty received by the trustee upon payment of any bond. Articles VI and VII provide for the payment of the principal sum stated in the ownership certificate, prior to maturity upon demand, by delivery to certificate holder of specific bonds, selected by the trustee, or at maturity by cash or unpaid bonds at the election of the certificate owner. The corporation agrees to repurchase bonds, at their unpaid face value, and equal to the face value of maturing certificates, at the maturity of the latter, with the proceeds of which sales to the corporation, the maturing certificates are to be paid. Article VIII, section 1, provides, " It is the intention of the parties hereto that the delivery to the purchaser thereof of a certified certificate, vests in the holder of such certificate the ownership of an amount in unpaid face value bonds, equal to the par value of the certificate, subject to the implied agreement on the part of the purchaser of such certificate by the acceptance thereof, to allow the said bonds to remain in the hands of the Trustee for collection under the terms and conditions of this Trust, and also subject to the release and waiver by the holder thereof of all interest, bonuses, penalties or other sums collected by the Trustee upon the bonds so deposited with the Trustee, in excess of the principal sum mentioned in such certificate and the interest on such principal sum at the rate specified in said certificate." Article IX provides that the certificates of ownership may be transferred, and also provides for the registration of such certificates. Article X provides that the corporation in joining in the execution of the trust agreement, warrants that the bonds deposited with the trustee are legal, valid and subsisting obligations, and that the installments of principal and interest specified in each bond will be paid as and when the same mature. Article XI sets forth the responsibility of the trustee under the terms of the trust, and Article XII fixes the amount of the trustee's fees.

The petitioner received " interest income " pursuant to and in accordance with the terms and provisions of the above mentioned ownership certificates at the rate of 6 percent per annum, payable semiannually as follows:

| | |
|---|---|
| Calendar year 1926 | $9, 624. 01 |
| Calendar year 1927 | 10, 327. 50 |
| Calendar year 1928 | 12, 127. 51 |

During the taxable years here in controversy none of the " interest income " here involved flowed to petitioner by reason of any of the warranties or covenants of Municipal Bond Co. or from bonds bearing an interest rate of less than 7 percent.

All of the bonds which were deposited in the trust provided for in the above trust agreement were municipal improvement bonds.

issued under special assessment laws of the State of California. The interest on these bonds was not subject to Federal income tax.

In its returns filed for the calendar years 1926, 1927, and 1928, petitioner treated the above amounts as interest received from municipal bonds and reported it as tax exempt.

Respondent restored the amounts in controversy to taxable income on the ground that such amounts constituted interest on obligations of the Municipal Bond Co. and not interest on tax exempt securities.

Thus, the only issue is whether the petitioner's acquisition of the certificates of ownership constituted a sale to it by the corporation of the beneficial ownership in municipal bonds, the interest on which is admittedly exempt from income tax, or was a loan by petitioner to the corporation, and the " interest income " thus received by petitioner as interest on the obligation of the corporation, and subject to that tax. This question is answered by the intention of the parties to the transaction evidenced by the " certificates of ownership " and the " trust agreement " made part thereof, construed as a whole (*Heryford* v. *Davis*, 102 U. S. 225), together with the actual treatment of the transaction by the parties thereto. *First National Bank in Wichita* v. *Commissioner*, 57 Fed. (2d) 7, affirming 19 B. T. A. 744; certiorari denied, 287 U. S. 636; *Bank of California, National Association*, 30 B. T. A. 556. Since it is stipulated that the disputed " interest income " was received in accordance with the terms of the certificates of ownership, which incorporated the " trust agreement " therein, we are concerned here only with the proper construction of those instruments. Cf. *Frank Turner*, 28 B. T. A. 91.

Undoubtedly the " certificate of ownership " on its face purports to " sell and transfer to the purchaser of this certificate all of its rights, title and interest in the Municipal Improvement Bonds ", deposited with the trustee under the " trust agreement " made a part thereof. That agreement contains all the essentials of a valid irrevocable declaration of trust. In unmistakable terms, it states that " It is the intention of the parties hereto that the delivery to the purchaser thereof of a certified certificate, vests in the holder of such certificate ownership of an amount in unpaid face value bonds equal to the par value of the certificate ", subject to the conditions of the agreement.

Respondent argues that the qualifications attached to this purported transfer of beneficial ownership, in the express and implied conditions of these instruments, are inconsistent with the transfer of any interest in the municipal bonds by the corporation to petitioner, and characterize the transaction as a loan from petitioner to the corporation, secured by a lien on escrowed guaranteed municipal bonds.

The absence of control by petitioner over the deposited bonds was a natural and not peculiar incident of a valid trust. Nor was the conditional right of the corporation to substitute bonds with the trustee inconsistent with such a trust. *Campbell* v. *Campbell*, 207 Ky. 17; 268 S. W. 588; *Leland* v. *Collver*, 34 Mich. 318; *S. A. Lynch*, 23 B. T. A. 435. The spread between the interest rate on the deposited bonds and that of the certificates of ownership, while of some possible significance, is certainly not controlling (cf. *First National Bank in Wichita* v. *Commissioner*, *supra*, and *Bank of California, National Association, supra*), particularly since the certificate rate was not the legal loan rate. Sec. 1, Act No. 3757 of the State of California, approved Nov. 5, 1918.

The corporation's repurchase agreement did not invalidate the trust by making incomplete the otherwise completed transfer, nor did it divest the ownership then conveyed. *Lyons* v. *Snider*, 136 Minn. 252; 161 N. W. 532; *Paulson* v. *Weeks*, 80 Or. 468; 157 Pac. 590. Although the fact that the repurchase price was par value, which was the basis upon which petitioner purchased, has been considered as some, though not compelling, indication of a loan (cf. *First National Bank in Wichita* v. *Commissioner*, *supra*, and *Bank of California, National Association, supra*), it has been held to evidence the transfer of an entire interest and thus imply sale. *Chase & Baker Co.* v. *National Trust & Credit Co.* (Dist. Ct., N. Dist. Ill.), 215 Fed. 633.

The warranty of the deposited bonds and the interest payable thereon, with the auxiliary 10 percent excess deposit of bonds, is at least equally consistent with an intended separate contract from that of sale or transfer in trust, as it is with a loan secured by guaranteed collateral. *Chase & Baker Co.* v. *National Trust & Credit Co., supra.*

The corporation's right to any premiums or penalties on the deposited bonds, said to be evidential of its failure to transfer beneficial ownership therein, loses its value in the presence of petitioner's right upon its demand to specific bonds, and thus to secure such profit. This right of petitioner, while possible of construction as an option if the transaction under consideration were a loan, is just as consistent with a condition terminating the trust as to petitioner if the transaction was a sale of a beneficial interest. *Cary* v. *Slead*, 220 Ill. 508; 77 N. E. 234; *Tuck* v. *Knapp*, 85 N. Y. S. 1001; 42 Misc. Rep. 140; *In re Ames*, 22 R. I. 54; 46 Atl. 47. Nor is that consistency lost by the mandatory selection by the trustee of bonds to satisfy such demand as the class for which the selection is to be made, is certain. *In re Dewey's Estate*, 45 Utah, 98; 143 Pac. 124.

The existence of a beneficial interest in the deposited bonds to the extent of the excess deposited, the premiums and penalties to be received on the bonds and the difference in interest received thereon and that paid on the certificates, in the corporation, and the remaining beneficial ownership in the deposited bonds in petitioner, is likewise consistent with a valid trust. Certainly the creator of a trust may also be a beneficiary thereof, either alone or jointly. *Reginald Brooks,* 31 B. T. A. 70; *Iola Wise Stetson,* 26 B. T. A. 390; 27 B. T. A. 173.

The argument that if a valid trust was created it was " in the avails of the bonds " and not the bonds themselves, is of little, if any weight, generally, in itself, and fails here particularly because upon termination of the trust as to petitioner it had the right to demand specific bonds. This right at maturity, as well as its alternative, the right to the " avails of the bonds " at the full par value of the certificate of ownership, contradicts the deposit of bonds as a mere escrow transfer to secure a primary obligation of the corporation. Cf. *Frank Turner, supra; Frank P. Welch,* 12 B. T. A. 800.

In short, the " certificate of ownership " and " trust agreement " disclose nothing inconsistent with the stated intention of creating an irrevocable trust in municipal bonds and selling the beneficial ownership therein. Neither document contains any primary obligation of the corporation to petitioner, certificate holder. The only obligation of the corporation was its secondary liability on its covenant of warranty, from which none of the questioned amounts flowed. The necessary complement of respondent's present position would permit the pending disputed exemption to the corporation—certainly a difficult result to sustain.

Then again, and of emphatic if not compelling persuasion here, we have the uncontradicted background and purpose of the transaction.

This record contains no history or suggestion branding the corporation as at any time a borrower and petitioner as a lender. It indicates only that they were seller and purchaser. Cf. *First National Bank in Wichita* v. *Commissioner, supra; Bank of California, National Association, supra; Frank Turner, supra.*

The business of the corporation was the sale of these municipal bonds of odd face values and maturities. The present uncontradicted purpose of increasing the marketability of such bonds by eliminating these unfavorable features and the means chosen to effect it, are both credible and legal. Cf. *Reginald Brooks, supra.*

We conclude that the corporation created a valid irrevocable trust in municipal bonds, the interest on which, admittedly exempt from income tax, constituted its only income; that petitioner was a bene-

ficial owner of those bonds and received the controverted "interest income" as such, thereon, free from income tax. Cf. *Norfolk National Bank of Commerce & Trusts* v. *Commissioner*, 56 Fed. (2d) 48; reversing 26 B. T. A. 1111.

Reviewed by the Board.

*Decision will be entered under Rule 50.*