*96 OPINION.
Van Fossan:
The petitioners’ position is that the interest paid to them was interest upon the direct obligations of political subdivisions of the States of Texas and New Mexico and as such was exempt from Federal income tax on constitutional grounds and under the express terms of section 22 (b) (4) of the Revenue Act of 1928.[1] They state, on brief, “ if these petitioners are taxable on the amounts in controversy it is because under the particular facts of the cases the amounts in issue do not constitute interest upon such obligations.”
The respondent contends that the interest so paid was simply interest on the trust certificates which were the obligations of the grantors of the trusts or of the trusts themselves.
The petitioners rely principally on the language of the trust instrument stating that “the owner or registered holder of each ownership certificate * * * shall * * * be a beneficiary in the series of securities sold and assigned to the trustee as the basis of the issuance of the ownership certificates * * * ” and of the certificate itself reading “ Realty Trust Company * * * does hereby certify that the bearer hereof is entitled to participation in the proceeds and avails of certain special assessment certificates, bonds and direct obligations issued by municipalities of the States of Texas and New Mexico.” If the cases at bar were to rest on the quoted phrases alone, the petitioners’ theory would be persuasive, but we must look to the entire situation with its varied rights and obligations to determine the true character and the correct legal status of the certificates of participation.
The grantors in the several trusts were corporations. The corporation purchased the direct obligations of political subdivisions of states. It then transferred those securities to a trustee “ absolutely ”, under an agreement which contained many features not usually found in a pure trust. The so-called beneficiaries of the trust, unknown *97 and unnamed in the trust instrument, purchased “ Municipal Trust Ownership Certificates ” transferable by delivery, unless registered. The certificate was signed by the grantor, provided for a fixed rate of interest, matured in five years, and had interest coupons attached, the same being negotiable by delivery. The certificate provided on its face that the bearer or registered holder, “ particularly waives and releases all interest collected by the said Trustee upon the securities held by it under the said agreement of trust in excess of interest at the rate herein specified.”
• Under the trust agreement no definite municipal or state securities were made the corpus of the trust. The fund of such securities was a flexible and mutable portfolio subject wholly to the control and designation of the company. Withdrawals, eliminations, and substitutions were made at its will. Section 3 of Article III of the trust agreement specifically provided that the certificate holders should have no legal title or interest in the municipal securities themselves, but only in the proceeds from their sale and in a certain portion of the interest therefrom.
Though some provisions of the trust agreement and certificates, at casual reading, seem to indicate that the certificate owner was the direct recipient of interest from municipal and state securities, and though the cash payment of his semiannual coupons and, in part, the return of his capital in five years were presumed to arise from such a source, by the very terms of the plan in certain events those payments might be made from contributions made by the grantors or from previously received surplus interest. The certificate holder was concerned only with the regular payment of the interest due on the coupons and with the prompt payment of his capital upon maturity of the certificate. This payment bore no necessary relationship to the collection of the interest on any specific municipal securities. The company had guaranteed the payment of their principal and interest and had agreed to supply any amounts required by the trustee to pay such principal and interest when due.
The phrase “ the agreed semiannual interest rate ” found in the interest coupons is significant. The company had agreed and guaranteed that the certificate owner should receive that to which his certificate showed he was entitled. By guaranteeing the payment of the interest on the municipal and other similar securities, which apparently bore a much higher rate than the certificate coupon, the grantors thus made certain that the coupon owner would receive his interest. By reason of those assurances and other conditions on the part of the company, we are of the opinion that a new security, the “ Municipal Trust Ownership Certificate ”, was created, to which the petitioners looked and upon which security the interest *98 in question was paid. Attention is called to the fact there is nothing in the trust instrument and certificate, or in the record, to show that the certificate holder knew the kind, amount, interest rate, maturity, name of the obligor, or any other pertinent fact relating to the direct obligations of the state political subdivisions which issued the underlying trust fund securities. By reason of the guarantee of the company, his return was assured in the fixed amount. We conclude that the interest received by the petitioners was not interest upon the obligations of a state or political subdivision thereof and that, therefore, the income accruing by virtue of the ownership of the “ Municipal Trust Ownership Certificates ” was hot tax-free under the law.
In Frances B. Eldredge et al., Executors, 31 B. T. A. 111, we held that the taxing of profits of a dealer in tax-exempt securities was too remote to interfere with the governmental function of a state. Willcuts v. Bunn, 282 U. S. 216. So in the cases at bar we can see no possible influence that the taxing of the interest received by the petitioners on the certificates of participation can have on the functioning of the unnamed political subdivisions whose securities were held by the trustee. The record discloses that in 1930 out of $154,337.63 collected by the trustee from the securities held under the trust agreements, the Texas Bitulithic Co. received and retained $38,912.63, while in the same year the Fain-Townsend Co. retained the sum of $22,913.12 out of $75,213.12 collected by the trustee. These facts cast a revealing light on the inward character of the plan.
The petitioners rely on Norfolk National Bank of Commerce & Trusts v. Commissioner, 66 Fed. (2d) 48 (reversing 26 B. T. A. 1111), a case which grew “ out of the peculiar manner in which the Commonwealth of Virginia has borrowed money for the building of roads.” In that case the court observed that “ The Ridge Route Corporation was obviously formed and operated merely as an agency to facilitate the borrowing of money by the State.” The court concluded:
* * * that in reality the banks, and not the corporation, lent the money to the state, that the notes of the corporation were issued merely to indicate the extent of each bank’s participation in the transaction, and that the banks, and not the corporation, were the owners of the state and city obligations when the interest was paid.
The facts in these cases are so dissimilar that the cited case is no authority here.
The petitioners also cite Carson Estate Co., 31 B. T. A. 607, the facts in which, at casual reading, are somewhat similar to those in the cases at bar. There are, however, vital differences which serve to distinguish the cases.
*99 In the case cited the certificate provided that the corporation sells to the certificate purchaser “ all of its right, title and interest in Municipal Improvement Bonds issued under the special assessment laws of the State of California ” and that the certificate owner “ is entitled at any time upon demand and surrender of this certificate * * * to receive bonds of unpaid face value equal to the principal sum * * The trust agreement provides for the payment of the principal sum as stated in the ownership certificate prior to maturity, upon demand, by delivery to the certificate holder of specific bonds, selected by the trustee, or at maturity by cash or unpaid bonds, at the holder’s option. The agreement further provides :
* * * It is the intention of the parties hereto that the delivery to the purchaser thereof of a certified certificate, vests in the holder of such certificate the ownership of an amount in unpaid face value bonds, equal to the par value of the certificate, subject to the implied agreement on the part of the purchaser of such certificate by the acceptance thereof, to allow the said bonds to remain in the hands of the Trustee for collection under the terms and conditions of this Trust, * * *
None of the “ interest income ” in the Oarson case flowed to the petitioners by reason of any of the warranties of the corporation or of bonds bearing an interest rate of less than 7 percent.
In the cases before us the certificate states that the bearer (or registered holder) “is entitled to participate in the proceeds and avails of certain special assessment certificates * * * to the extent of the principal sum, payable from such proceeds and avails ” on a day certain. The trust agreement makes no provision for payment of the certificate prior to maturity nor does it permit the certificate holder, upon maturity, to receive specific bonds in lieu of cash. On the contrary, it states definitely that:
* * * Neither the Company nor the holder or owner of any outstanding ownership certificate issued hereunder shall have any legal title to or interest in any securities assigned and delivered to the Trustee hereunder, but the right of the Company and of such holder or owner shall be the right to receive from, and through the Trustee as herein provided the income, proceeds, and avails of such securities, and as to said Company the right to receive reassignment of portions of said securities, all in the manner in this agreement of trust provided, it being the intention hereof to vest the full legal title to said securities and all securities substituted therefor in said Trustee. * * *
Furthermore, after the ownership certificates of any series shall have been paid or provided for, all surplus of cash and securities shall belong to the grantors.
The comparison of the provisions quoted from the respective trust instruments and certificates demonstrates clearly that in the 0arson case the certificate holder was a beneficial owner of certain deposited bonds and could obtain a specific allocation of his share of those *100 bonds on demand before or upon maturity. The petitioners here had no such right. They were entitled to only a definite semiannual interest return on the principal sum, which sum was to be repaid in cash at the maturity date of the certificate. They looked to the grantor for assurance as to both the interest and the return of principal.
Reviewed by the Board.

Decision will be entered for the respondent.

 (b) Binclusions from gross income. — The following items shall not be included in gross income and shall be exempt from taxation under this title:
*******
(4) Tax-pkee ineebest. — Interest upon (A) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia; or (B) securities issued under the provisions of the Federal Farm Loan Act, or under the provisions of such. Act as amended; or (C) the obligations of the United States or its possessions. Every person owning any of the obligations or securities enumerated in clause (A), (B), or (C) shall, in the return required by this title, submit a statement showing the number and amount of such obligations and securities owned by him and the income received therefrom, in such form and with such information as the Commissioner may require. In the case of obligations of the United States issued after September 1, 1917 (other than postal savings certificates of deposit), the interest shall be exempt only if and to the extent provided in the respective Acts authorizing the issue thereof as amended and supplemented, and shall be excluded from gross income only if and to the extent it is wholly exempt to the taxpayer from income taxes.