## CHRISTMAN v. ROESCH.

(Supreme Court, Appellate Division, Second Department. April 23, 1909.)

1. **WILLS (§ 513\*)—GIFT TO EXECUTORS—NECESSITY OF BEING PLAINLY MANIFESTED.**

   Before a gift to executors eo nomine can be held to vest in them individually, the intention that it should do so must be plainly manifested.

   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 513.\*]

2. **WILLS (§ 513\*)—RESIDUARY ESTATE—RIGHT OF EXECUTOR THERETO.**

   After making several bequests, including one of $400 to her executor, testatrix empowered him to sell her house "at his best advantage" and pay the bequests, and then declared that "all the rest and residue shall be used at the best of advantage of my executor who can give such papers and instruments which are required in such case." The estate consisted of the house, and of personal property, in addition to household goods and jewelry, amounting in value to $168. *Held*, that the will did not plainly manifest an intention to give the residuary estate to her executor individually, and that it was too doubtful to allow him to take the same.

   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 513.\*]

3. **WILLS (§ 152\*)—EXECUTION—MISINTERPRETATION OF INSTRUCTIONS.**

   If a draftsman, in drawing a will, misinterpreted the instructions given to him by the testatrix, the instrument would not be her will.

   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 152.\*]

4. **WILLS (§ 513\*)—CONSTRUCTION—PARTIAL INTESTACY—RESIDUARY ESTATE—RIGHT OF EXECUTOR.**

   That the construction of a will resulting in partial intestacy is not favored does not overcome the weightier reasons for not allowing an executor to take the residuary estate unless plainly given him.

   [Ed. Note.—For other cases, see Wills, Dec. Dig. § 513.\*]

Appeal from Special Term.

Action by Carl Christman against Andrew C. Roesch, individually and as executor of Maria Foehner, deceased. From a judgment dismissing his complaint, plaintiff appeals. Reversed.

The testatrix made several bequests of specific amounts, aggregating $2,400, including one of $400 to Andrew C. Roesch, whom she later named as executor. Immediately following those bequests she used this language, viz.: "I empower my executor hereinafter named, who shall have full power and consent and without security or bonds, to sell and convey the house No. 49 Scholes street, at his best advantage and pay the above requests all the rest and residue shall be used at the best of advantage of my executor who can give such papers and instruments which are required in such case." The estate of the testatrix consisted of said house, and of personal property, in addition to household goods and jewelry, amounting in value to about $168. She was survived by the plaintiff, her brother. The will was drawn by a relative of the executor, who received his instructions from the testatrix in German.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

<hr>

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Louis Frankel (Julian B. Beaty, on the brief), for appellant.
Louis J. Halbert, Jr., for respondent.

MILLER, J.    Prior to St. 1 Wm. IV, c. 40, the undisposed of personal estate of the testator vested in the executor beneficially; but any expression in the will indicating a contrary intention—for example, one giving the executor a legacy—was seized hold of by the courts of equity to prevent that result.    Farrington v. Knightly, 1 P. Wms. 544;  Southcot v. Watson, 3 Atkyns, 226;  Andrew v. Clark, 2 Ves. Sr. 162;  Bennet v. Batchelor, 1 Ves. Jr. 63.    In Cradock v. Owen, 2 S. & G. 241, decided in 1854, a testatrix gave to two devisees, who were also her executors, all her real and personal estate in trust for sale.    She then directed that her executors should each retain out of the proceeds of the sale of the real and personal estate the sum of £50 for his trouble.    She then made certain bequests to legatees by name, but did not otherwise dispose of her residuary estate.    It was held that the gift of the £50 to the executors excluded them from any beneficial interest in the estate, and, there being no next of kin, that the personal estate went to the crown.    In Saltmarsh v. Barrett, 29 Beav. 474, the testator gave legacies of 19 guineas to each of his executors, and then bequeathed the whole of his estate to them absolutely.    He then charged his estate with certain legacies, and directed the executors to deduct their costs, charges, and expenses from any moneys of his estate coming to their hands.    The Master of the Rolls held that the executors took as trustees for the next of kin; the principal reasons for that construction being the gift of the pecuniary legacy and the direction for the payment of the executors' costs and expenses.    Upon appeal, the court was divided, and the appeal was dismissed, without costs.    3 De G., F. & J. 279.    It will be noticed that, in that case, the testator in terms bequeathed the whole estate absolutely to the executors, and then confirmed the absolute nature of the bequest by charging upon it certain legacies.

The law in this state is that "before a gift to executors eo nomine can be held to vest in them individually the intention that it should so vest must be plainly manifested."    Forster v. Winfield, 142 N. Y. 327, 37 N. E. 111.    The question is, then, whether the intention of the testatrix to give her residuary estate to her executor individually has been plainly manifested.    I do not think it has.    The meaning of the words "all the rest and residue shall be used at the best of advantage of my executor," standing alone, would not seem to me to be free from doubt;  but, when coupled with the direction to the executor to sell the real estate "at his best advantage," the doubt is greatly increased.    Plainly, by the latter expression, she meant the advantage of her estate, not the personal advantage or benefit of the executor; and I see no reason to think that the two expressions were used in different senses, especially when the provision that the residue shall be used at the best advantage of the executor is immediately followed, without separation, by the provision that he can give such papers and instruments as are required.    It seems to me that there is much reason to think that the testatrix had in mind only the sale of the real estate to the best advantage of the estate and the payment from the proceeds

of the sale of the pecuniary legacies. It is quite probable that she thought that would exhaust the estate. Certainly, if the executor was to have the residuary estate, there could be no occasion for him to give "papers and instruments" in respect thereto. Manifestly, the papers and instruments which the testatrix had in mind were those which might be required on the sale of the real property, and the position of the expression in reference to giving papers and instruments shows, or tends to show, that by the paragraph quoted in the above statement of facts the testatrix was attempting only to provide for the sale of the real estate to the best advantage of her estate and the payment of the pecuniary legacies therefrom. Moreover, the gift of the specific sum of $400 to the person by name who was afterward named as executor, in connection with the fact that she referred to him only as executor in the paragraph under consideration, increases the doubt, if, indeed, it does not altogether remove it and show that the legacy of $400 was the extent of the beneficial interest which she intended to give him. If he was to be the residuary legatee, there was no reason to give him a general legacy. At any rate, the case is too doubtful to allow the executor to take the residue.

Of course, in this case we have to assume that the will before us is the will of the testatrix—that the draftsman drew it according to the instructions received by him. His testimony would seem to indicate that perhaps he did not interpret correctly. If he did not, then the instrument before us is not the will of the testatrix. It frequently happens that the draftsman of a will is also made executor. It would be very easy for the draftsman, under the circumstances disclosed in this case, to incorporate such a provision as is found in this will without the testator ever suspecting that he had made his executor his residuary legatee and devisee. The will in the Matter of Hollohan, 6 Dem. 166, and 52 Hun, 614, 5 N. Y. Supp. 342, was unlike this one. There there was no ambiguity in the residuary clause, the executor was referred to by name, and he had not been given a pecuniary legacy. It is true that this construction will result in partial intestacy, which is not favored; but that does not overcome the weightier reasons for not allowing an executor to take the residuary estate unless it is plainly given to him.

The judgment should be reversed, and, as the facts cannot be changed, judgment directed for the plaintiff.

Judgment reversed, and judgment directed for the plaintiff, without costs. All concur.