CAROLINE T. GILMAN ET AL., EXECUTORS, vs. CARO-
LINE T. GILMAN ET ALS.

Second Judicial District, Norwich, April Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

A gift by a testator of the residue of his property to his executors to be
distributed at their discretion, vests in them an absolute and bene-
ficial estate, unless such interpretation is precluded by other pro-
visions of the will, or is inconsistent with its general scheme and
purpose.

The provisions of the will in the present case reviewed, in the light of the
extrinsic facts found and detailed upon the record, and *held* to give
to the executors an absolute title to the residue of the property
free from any trust.

Those claiming the residue in opposition to the executors, contended
that the latter took the property upon a trust which was too vague
and indefinite to be enforced, and hence the property became intes-
tate. *Held* that while there was warrant for such contention, the
weight of authority and the Connecticut cases especially, were
clearly in favor of the other view, that the executors took a fee.

The mere fact that the persons named as executors, together with other
relatives, received small pecuniary bequests, is not inconsistent
with an absolute gift of the residuary estate to them as executors;
at best, that fact is only a circumstance to be given such weight
as is justified by the context and general scheme of any particular
will.

In this jurisdiction a power of sale conferred upon the executors is a
common incident of the simplest will and is often found convenient
and economical; and hence a claim that a gift to the executors
could not have been intended as an absolute estate, since there
would then have been no reason for giving the executors a power
of sale, is of little moment.

There is no cardinal rule of construction to the effect that a gift to
executors *eo nomine* is presumably one in trust. Such a testamen-
tary gift, like any other, is to be determined by the ordinary rules
of interpretation, and not by any forced or artificial emphasis
approximating to a presumption.

A testamentary gift to executors "to be distributed at their discretion,"
does not import a gift in trust where there is no indication what-
ever of the purpose to be accomplished nor of the persons to be
benefited; and this is especially true where it appears, as it did
in the present case, that the testatrix not only knew how to create
a trust had that been her intention in making the gift in question,

but refrained from doing so because she realized her inability to foresee conditions which might arise thereafter, and preferred to leave the ultimate disposition of the residue to those who were acquainted with her desires.

In the construction of bequests of this character care should be taken not to confuse the hopes and desires of a testator with the expression of his formal and legal intent; for one may deliberately and intentionally part with the definite control of property which a formal trust would have retained, in order that his desires and expectations may be the better realized under conditions which he could not anticipate during his lifetime.

Generally speaking, each will must be construed by itself, and cases cited as authority, unless precisely analogous, are entitled to little weight.

Argued April 24th—decided October 5th, 1923.

Suit to determine the validity and construction of a clause in the will of Louisa G. Lane of Norwich, deceased, brought to and reserved by the Superior Court in New London County, *Brown, J.*, upon the allegations of the complaint, admitted in the answers, for the advice of this court. *Superior Court advised that the executors take the residue absolutely, free from any trust.*

Louisa G. Lane, a resident of Norwich, died there August 7th, 1922, aged eighty-three years, leaving a will which was proved in the Court of Probate for the district of Norwich. In the will she created a trust in the sum of $25,000, providing for payment of the net income of the fund to Maria Louisa Lane for life, and the division of the principal fund upon her death among three grandchildren of the deceased husband of the testatrix. She also gave pecuniary legacies of $3,000 each to said grandchildren. The testatrix also made bequests of $1,000 each to eight persons, seven of whom were her nephews and nieces, and these seven persons, together with Lawrence Gilman and Joseph Gilman, grandnephews, and sons of a deceased nephew Arthur C. Gilman, are the defendants in this action.

The will further provides as follows: "Sixth. I leave

my clothing, laces and jewelry to my niece, Caroline T. Gilman, to be distributed by her among my friends. Seventh. All the rest, residue and remainder of my property both real and personal, of which I may die possessed or to which I may be entitled at my decease, I give, devise and bequeath to my brother, William C. Gilman, for use during his natural life. All the rest residue and remainder of my property, I give, devise and bequeath to my executors to be distributed at their discretion. Eighth. I nominate and appoint my brother, William C. Gilman, my niece, Caroline T. Gilman, and my nephews George H. Gilman and Francis Gilman, or whichever shall qualify and the survivors of them as and for the executors of this my last Will and Testament, and I direct and request that they be required to give only nominal bonds. Ninth. I give to my said executors or executor, and the survivors or survivor of them, the power to sell either at public or private sale, or to lease at their discretion, any portion of my property, real or personal of which I may die possessed."

The plaintiffs, Caroline T. Gilman, George H. Gilman, and Francis Gilman, appointed as executors in the will, have duly qualified as such executors and are now acting. William C. Gilman, the fourth executor named in said will, predeceased the testatrix. The plaintiffs are also defendants in their individual capacity.

The testatrix was the widow of George W. Lane, to whom she was married on or about May 30th, 1883, and who died on or about December 30th, 1883. No children were ever born to Louisa G. Lane. She had six brothers and sisters of the whole blood, all of whom predeceased her: Edward W. Gilman, Elizabeth G. Thompson, Daniel C. Gilman, William C. Gilman, Maria P. Gilman and Emily S. Gilman. Edward W.

Gilman died in 1900, leaving surviving him two children, Caroline T. and Julia S., and the issue of Arthur C. a deceased child. Arthur C. Gilman died in 1890, leaving two children, Lawrence Gilman and Joseph Gilman. Caroline T. Gilman is now living and unmarried. Julia S. Gilman is now living and is the widow of Eugene S. Bristol. Elizabeth G. Thompson died in 1892, leaving a son, W. Gilman Thompson, as her only descendant. Daniel C. Gilman died in 1908, leaving two daughters, Elizabeth and Alice; the latter is the wife of Everett P. Wheeler. William C. Gilman died on or about March 30th, 1922, leaving two sons, George H. Gilman and Francis Gilman, surviving him.

With the exception of the period of approximately seven months during which she was married to George W. Lane, Louisa G. Lane had her home during the entire period from and after 1863 down to the date of her death, in the house at 380 Washington Street, Norwichtown, Connecticut. This house was owned at the time of her death by Eliza Coit Gilman, mother of Louisa G. Lane, and was by the will of Eliza Coit Gilman devised equally to Maria P. Gilman, Emily S. Gilman and Louisa G. Lane, all of whom were living at the date of the death of Eliza Coit Gilman. The house was also the home of Maria P. Gilman and Emily S. Gilman after 1863 up to the dates of their respective deaths, and was also occupied by William C. Gilman from approximately 1900 down to the date of his death. This house served as a common meeting ground for the various members of the Gilman family, and family gatherings were held there from time to time. The sisters, Maria, Emily and Louisa, were always ready there to extend hospitality to the children and grandchildren of their deceased brothers and sister; and all of the sisters, and particularly Louisa G. Lane, repeatedly expressed the wish that the house should always be maintained

and kept open for family gatherings and well understood that this was impossible without an appropriation for such purpose.

Louisa G. Lane received, as the survivor of a group consisting of herself and Maria P. Gilman and Emily S. Gilman, a large proportion of the property of which she was the owner at the time of her death under the will of her uncle, Joshua Coit. The will of Joshua Coit left the residue of his estate to his nieces Maria P. Gilman, Emily S. Gilman and Louisa G. Gilman (the testatrix) "jointly to them, and the survivors and survivor of them, and the heirs of the survivor." Joshua Coit also left with his will two certain papers or memoranda, by which he informed his nieces that the income of the sum given them in his will was intended in the first place for their "greater comfort, convenience of hospitality and independence, the principal after your life to go to your brothers and sisters and their families, as you think judicious and provide by will." He further stated to them that the ordinary way to effectuate such an intention was to create a trust wherein trustees are required by law strictly to carry out the provisions made by the donor, and that had he pursued this latter course he would have selected his nieces in preference to all others, but that questions arise in a strict trust which are often embarrassing and consequently recourse to courts may be necessary, and that such questions could better be solved by his nieces by carrying out in good faith the main object of the bequest. The testatrix knew of the will of Joshua Coit and of the memoranda above referred to, and was acquainted with their terms and phraseology. The testatrix kept the property received by her under the will of Joshua Coit as a separate fund.

The testatrix was upon very friendly terms on November 17th, 1919, and at all times prior and subse-

quent thereto, with all of her relatives, and especially with all of the defendants and their respective families; and for several years prior thereto she had been contributing to the support of her niece, the defendant Caroline T. Gilman, and her nephew, the defendant Francis Gilman. About the year 1915, she caused her nephew George H. Gilman to draw a will according to her instructions, and he sent her from New York to Norwich an original draft and a carbon copy thereof, a copy whereof appears in the record marked Exhibit H. She executed the original draft as her last will and testament, which will she subsequently destroyed. In the year 1919, she sent to George H. Gilman, in New York, the carbon copy, Exhibit H, with instructions to draw another will, making certain specified changes. He made a draft of a will according to said instructions, a copy of which appears in the record marked Exhibit I, and sent it to her. She never executed it, but not long after executed her last will and testament.

The following questions are propounded for the advice of this court:—

"a. Whether or not the executors named in the will of Louisa G. Lane who have qualified are entitled under the seventh article of said will to the residue of said estate absolutely and in fee simple for their own use free of any trust or obligation.

"b. Whether or not said executors hold said residue upon a trust, and if so what is the nature of such trust and who are the beneficiaries thereof.

"c. Whether or not said executors hold said residue impressed with a trust, but a trust which is too vague and indefinite to be enforceable, so that the heirs at law and next of kin are entitled to said residue as intestate estate.

"d. As to who is entitled to said residue, and in what proportions."

The three executors, in their personal capacity as defendants, and the defendant Elizabeth Gilman, claim that the residue disposed of in the seventh article of the will vests absolutely in the executors who qualified, free from any trust or obligation, and that the seventh paragraph is not void or inoperative and the residue is not intestate estate.

The other defendants claim that the seventh article of the will vests no beneficial interest in the residue; that the executors do not take the residue absolutely; that said residue is impressed with a trust which is too vague and indefinite to be enforceable, and that the residue should be divided according to the provisions of the statute of distributions.

Further facts appear in the opinion.

*Wallace S. Allis,* for the plaintiffs.

*Gardiner Greene,* and *George H. Gilman* of New York City, for the defendants Caroline T. Gilman *et al.*

*J. Dwight Dana,* with whom, on the brief, was *William B. Dana,* for the defendants Julia S. Bristol *et al.*

*John P. Huntington,* for the defendant Elizabeth Gilman.

KEELER, J. The seventh article of the will of the testatrix gives to her executors the residue of her estate "to be distributed at their discretion." Read free from considerations arising from claimed rules of construction, this provision seems to clearly indicate that the testatrix desired her executors to take this property and make such disposition thereof as to them seemed best. We think, then, that the discussion of the questions raised in the reservation can properly be approached by

considering, first, the claims of these defendants who contend that the gift to the executors is upon a trust too vague and indefinite to be enforced. Taking up first such claims of law as are pressed in this behalf, we find it asserted that the giving of general pecuniary bequests to the persons who are afterward in the will named as executors is inconsistent with an absolute gift to these parties as executors. This claim, of course, entirely ignores the provision as to distribution just quoted, and assumes that the executors qualifying will apportion the residue among themselves and exclude the other relatives of the testatrix; that because the executors have the power so to do, they will proceed in that way, and that hence the provision now considered could never have been intended to result in giving such a power and estate, albeit such an estate is necessary to effectuate the purpose which the testatrix had in mind. This point will be discussed more at length when later we consider the provisions of the will in detail; we now give attention to the authorities cited as supporting such a contention. In *Haskell* v. *Staples,* 116 Me. 103, 110 Atl. 148, the testator gave to Hall J. Staples, whom he also named as executor, a pecuniary legacy of $500 and bequeathed the residue of his estate to him "in trust . . . to be by him distributed and disposed of as he pleases." The court found an express trust to exist which was declared void by the court for uncertainty. In connection with so holding, the court instances the fact of the pecuniary legacy as negativing the idea of a beneficial interest in the residue given in trust, in that a sharp distinction is made in the character of the two estates granted. There is no indication that the court did or would have based its decision on this point alone. In *Briggs* v. *Penny,* 3 Mac. & G. 546, the testatrix gave Sarah Penny, who was also executrix, a legacy of £3,000, and a further legacy of £3,000 for her trouble as execu-

trix, and also gave to her the residue of the estate "well knowing that she will make a good use and dispose of it in a manner in accordance with my views and wishes." The court held that the gift was a precatory trust, on the ground that all option or discretion on the party who was to act, was taken away and that the executrix was bound by the wishes of the testatrix, which were so uncertain as to make the trust void. In connection with the other provisions of the will the Lord Chancellor instances the liberal provision made by the pecuniary legacies, but nowhere indicates this consideration as a controlling or independent feature in the case. In neither of the two cases cited is the rule laid down in the absolute and categorical way claimed by these defendants in the instant case. In *Balfe* v. *Halfpenny*, 1 Irish Reps. (1904) 486, the holding is in accordance with the claims of these defendants. *In re Dewey's Estate*, 45 Utah, 98, 143 Pac. 124, cited to this point, did not involve this question. In *Thomas* v. *Anderson*, 158 C. C. A. 70, 245 Fed. 642, the court found very properly that the residuary clause created a precatory trust which was void for indefiniteness. In arriving at its conclusion the court gave weight to the fact of a large pecuniary legacy given in the will to the executor, but the opinion stresses other features rather than this one. In *Christman* v. *Roesch*, 132 N. Y. App. Div. 22, 116 N. Y. Supp. 348, affirmed without opinion in 198 N. Y. 538, 92 N. E. 1080, only minor consideration is given to the pecuniary legacy given by the will to the executor.

We fail to find any case where the rule of construction claimed by these defendants was made the sole or the controlling reason of decision, and must conclude that in so far as being a cardinal rule of construction it is one of quite minor importance, and to be given such weight only as is justified by the context and general scheme of any particular will.

As applied to the will in question, we note that
$1,000 each is given to all of the seven nephews and
nieces of the decedent, and that the executors are three
of this class of legatees.   In making these gifts the tes-
tatrix, in the familiar language of conversation, was re-
membering her nephews and nieces.  Her estate was of
considerable size, and the amounts given as above are
certainly so small as not to indicate any ulterior reason
in her mind directed to the fact that they were to be
executors, and also her residuary legatees.  Such a con-
currence in wills is not infrequent.  In the instant case
we cannot regard the legacies to the nephews and a niece
as modifying the residuary provision.

It is further insisted that the power of sale given to
the executors in the will is superfluous if they take the
estate beneficially.  In the case of *In re West*, L. R.
(1900) 1 Ch. Div. 84, cited to this point, there was an
express trust which did not exhaust the residue, and it
was held that the character of the trust was impressed
upon the whole fund and that the trustees could not
take beneficially the unappropriated part of it.   The
case of *Thomas* v. *Anderson, supra,* is again invoked.
The court, as we have seen, held that the will estab-
lished a precatory trust, and negatives a beneficial be-
quest because of a power of sale given to the executor,
saying that the language conferring the power is mere
surplusage ''if the residuary estate was given to him as
his private property.  Every owner of private property
has a right to exercise all those powers with respect to
it.''   *Christman* v. *Roesch, supra,* is in accord with
*Thomas* v. *Anderson* on this point.

However legitimate this observation may be as ap-
plied to the law of Missouri passed upon in *Thomas* v.
*Anderson,* it certainly is not adapted to the practice
existing in Connecticut.  A power of sale in this ju-
risdiction is convenient in the simplest will, and almost

a necessity in an instrument which is comprehensive and contemplates a considerable time in the full execution of its provisions. It enables sale of real property pending the settlement of an estate, without the necessity of an application to court for an order, attended perhaps with the expense of a large charge for a surety bond, it facilitates transfer of securities, and in other ways is useful.

Looking at the will in question in the light of what has just been said, and comparing it with prior testamentary endeavors of the testatrix, we find in the will of 1915 (Exhibit H) and the draft-will of 1919 (Exhibit I) powers of sale in practically identical terms; and further, in the will of Maria P. Gilman, and in that of Emily S. Gilman, her sister (made part of the record as Exhibits B and C), similar provisions exist, inserted in all of these instruments for the evident purpose of facilitating the settlement of estates, which were likely to run over a considerable time before final disposition could be made.

Examining in detail the will under consideration, we note that in the first place it contains a trust provision for the benefit of Maria Louisa Lane during her life, and also that the use of all of the residuary estate is given for life to William C. Gilman; both the trust and the life use just referred to were not unlikely to continue for some years, and for the management of them the power of sale was a valuable and convenient instrumentality. Article seventh of the will, with the construction of which we are dealing, contains two successive bequests of the residue, the first to William C. Gilman for life, the second to the executors to be by them distributed. The latter took no interest in possession, beneficial or otherwise, in this estate until the death of William C. Gilman. The latter, upon giving the statutory bond, became entitled to the custody of the personalty included in the residue, but without

power to dispose of the same or to change investments. By the ninth article of the will the executors are given this power. So that in this will, as in the prior testamentary documents alluded to, the power of sale is simply convenient machinery of administration. That the testatrix, in view of what has been said, inserted this provision with the idea claimed by counsel, is not borne out by the purport of the will, nor by prior existing facts which the testatrix may have had in mind.

We now pass to the principal contention of the defendants whose claims we are now considering, to the effect that article seventh is impressed with a trust of a precatory nature, and that for want of definiteness the trust is unenforceable and fails.

As bearing upon this contention these defendants make three principal claims: first, that the gift to the executors *eo nomine* implies a trust; second, that a trust is implied by the use of the words "to be distributed," and that the trust so implied is indefinite and unenforceable; and third, that the language of the will is consistent only when construed as attempting to impose a trust upon the executors.

With reference to the implication that the gift to the executors as such implies a trust, there are cited the following cases: *Nichols* v. *Allen,* 130 Mass. 211; *Minot* v. *Attorney General,* 189 Mass. 176, 75 N. E. 149; *Yeap Cheah Neo* v. *Ong Cheng Neo,* L. R. 6 P. C. 381. All of these cases put the decision upon the general import of the will, and in none of them, although the fact of gift to executors *eo nomine* is mentioned, is that feature made decisive of the case, or as one point among others decisive, nor is the point deemed of such importance as to be included in any of the head-notes. Relying on the case of *Gross* v. *Moore,* 68 Hun (N. Y.) 412, 22 N. Y. Supp. 1019, it is said that the case supports the view "that a gift to executors by that designation

and not by name 'negatives the view that the executors were to keep the property as their own.' " An exact and literal quotation from this part of the opinion is: "We think that the language directing that the residuum 'be distributed by him according to the instructions given him by' the testatrix negatives the view that the executor was to keep the property as his own." The difference is apparent. In *Blunt* v. *Taylor,* 230 Mass. 303, 119 N. E. 954, the court found a precatory trust, and that the executors were trustees and designated as "executors and trustees," and after finding a trust void for uncertainty, the court adds: "The gift was not to the petitioners by name, but was a gift to them as trustees and executors." This can go but a short distance in support of the broad claim that the gift *eo nomine* is controlling unless expressly modified by other provisions of the will. In *Condit* v. *Reynolds,* 66 N. J. L. 242, 49 Atl. 540, the court held that the bequest to the executor was controlled as a fiduciary one, in that the husband and executor was charged by the will to carry out such charge and instruction as had been communicated to him by the testatrix during her lifetime in making his will. The remark quoted in the brief of these defendants, that the office of an executor is "an office which implies a trust to effectuate the purposes manifested by the will," is contained in the introductory part of the opinion and not otherwise mentioned nor in any way connected with its construction of the will. The decision was by a divided court. Upon this point also counsel again cite the case of *Thomas* v. *Anderson, supra,* and quote a dictum of the opinion: "It is a cardinal rule, well established by authority, that a devise of property to an executor is presumed to be given to him in trust, and not privately, and in order to justify a court in reaching a contrary conclusion there must be language in the will which clearly expressed

such an intent." No authority is given for this extreme statement, and we can find none in which it is held that a bequest to an executor raises a presumption against a beneficial taking which must be rebutted by language clearly expressive of such an intent. Nor is the rule a cardinal rule of construction. We think that the rule expressed in *Forster* v. *Winfield*, 142 N. Y. 327, 37 N. E. 111, cited by counsel, represents the extent to which any well-considered decision has gone. It is there laid down: "Before a gift to executors *eo nomine* can be held to vest in them individually the intention that it should so vest must be plainly manifested." This certainly gives all the weight to this consideration in any given case that can reasonably be claimed for it, and is far from raising it to a presumption. The other New York cases cited by counsel follow this decision and need no comment. Cases in other jurisdictions do not state a rule so definite or explicit, but seem rather to follow the English rule. This is laid down authoritatively in the case of *Williams* v. *Arkle*, L. R. 7 H. L. 606, decided in 1875. The Lord Chancellor (Cairns), adverting to the law previous to the statute of 1830 (Lord St. Leonard's Act), that an executor took by virtue of his office any overplus of personalty not appropriated by the provisions of the will, and that the Act referred to, as to such overplus, made the executor a trustee for the next of kin " unless it shall appear . . . that he is to take the residue beneficially," goes on to say that the statute does not apply where there is a distinct gift of residue, and that the meaning of any residuary bequest must be ascertained by the ordinary rules of construction. The Lord Chancellor further observes that "a contrary interpretation of the statute, which would in effect say that the words of a testator shall be construed, not according to their ordinary meaning, but according to an artificial

construction, raising a presumption which the law does not raise, and throwing a burden of law where the law does not throw it, and thus giving by statute to one person what the law on ordinary principles of construction would or might give to another person, would, it seems to me, be opposed to the preamble and object of the statute."

The above extract states the law of England as it has been received for nearly fifty years in that country. 2 Jarman on Wills (6th Ed., English) 1118; Theobold on Wills (7th Ed., English, Canadian Issue) 486. As we have seen, there are American cases which assign to a bequest to an executor, as such, an importance greater than is above expressed; there are other cases which treat such a bequest as on a par with other salient features in any given will, and from the general tenor of the instrument assign to it the importance to which it is entitled, which in some instances may be great and in others of slight significance. We do not think such a bequest, while always a factor to be considered and reckoned with, in ascertaining the intention, should be given an emphasis approximating to a presumption. From the weight attached to this claim by counsel we have given it somewhat extended discussion, but fail to see that in the instant case it is so controlling as to foreclose further discussion of the provisions of the will as an entirety.

Passing to the second claim of these defendants as before stated, that by reason of the language of the residuary clause a trust is created, we cite the familiar rule that whether a trust is created by a will is to be gathered from "the general purpose and scope of the instrument." *Colton* v. *Colton*, 127 U. S. 300, 8 Sup. Ct. 1164. In *Loomis Institute* v. *Healy*, 98 Conn. 102, 119 Atl. 31, we recently stated the rule as to a trust created by precatory words; that in order that a trust may arise "'the

court must be satisfied, from the words themselves, taken in connection with all the other terms of the disposition, that the testator's intention to create a trust was as full, complete, settled, and sure as though he had given the property to hold upon a trust declared in the ordinary manner,' " and that uncertainty indicates rather an absence of a trust than the creation of a void trust. We quoted with approval 1 Perry on Trusts & Trustees (6th Ed.) § 116, as follows: "Nor will a trust be implied if there is uncertainty as to the property to be subjected to the trust, or as to the persons to be benefited by the trust, or as to the manner in which the property is to be applied." Connecticut cases were referred to, in the case just cited, confirming this view, which need not here be again cited. This has been for many years the rule in England. 1 Jarman on Wills (6th Ed., English) 482.

Counsel on each side of the present controversy exhaustively and with great diligence have collected the cases on this point in favor of their respective contentions, which we shall briefly review, but having in mind that in the interpretation of a will in general each one must stand by itself, and that precedents are entitled to little weight, where the cases involved are not precisely analogous, *Lyon* v. *Acker*, 33 Conn. 222, or in short, that every will presents its own problems, we shall eliminate from discussion cases presented on either side where trusts have been expressly created by the use of the word "trust," or "trustee," or other equivalent terms, and those precatory trusts where the language used in originating them is of such fullness and scope as to bear little resemblance to those contained in the will now considered, and confine ourselves to those cases which present terms closely approximating to those used therein. This will remove from consideration the following cases cited by these defendants

whose claims we are now considering: *Haskell* v. *Staples, supra* (words "in trust" used); *Briggs* v. *Penny, supra* (residue to be disposed of "in accordance to my views and wishes"); *Thomas* v. *Anderson, supra* (direction "to follow instructions"); *In re West, supra* (express trust); *Gross* v. *Moore, supra* (direction to distribute according to instructions given); *Condit* v. *Reynolds, supra* (instructions given in lifetime); *Davison* v. *Wyman,* 214 Mass. 192, 100 N. E. 1105 (property left "in trust"); *Fitzsimmons* v. *Harmon,* 108 Me. 456, 81 Atl. 667 (wishes expressed in lifetime); *Olliffe* v. *Wells,* 130 Mass. 221 (wishes expressed or to be expressed); *Davison* v. *Wyman,* 214 Mass. 192, 100 N. E. 1105 (express trust); *Dunbar* v. *Hammond,* 234 Mass. 554, 125 N. E. 686 (disposition "as I may privately direct her"); *Yeap Cheah Neo* v. *Ong Cheng Neo, supra* (express trust covering entire residuary estate); *Fowler* v. *Garlike,* 1 Russ. & Myl. 232 (estate given upon trust); *Vezey* v. *Jamson,* 1 Sim. & Stu. 69 (express trust created); *Green* v. *Collins,* 28 N. Car. (6 Ired.) 139 (left to wife "to divide among children"); *Buckle* v. *Bristow,* 10 Jur. N. S. 1095, 141 Rev. Rep. 806 (gift is "upon trust"); *Forster* v. *Winfield,* 142 N. Y. 327, 37 N. E. 111 (gift to "trustees and in trust"); *Ellis* v. *Selby,* 1 Myl. & Craig, 286 (express trust); *Adye* v. *Smith,* 44 Conn. 60 (express trust). The Irish cases of *Balfe* v. *Halfpenny, supra,* and *Fenton* v. *Nevin,* 31 L. R. Ir. Ch. Div. 478, sustain the contention of these defendants.

It remains to consider certain cases cited by counsel more nearly approximating the instant case in their provisions. In *Nichols* v. *Allen,* 130 Mass. 211, the residuary gift was "to my executors and the survivor of them, or their successors, if any such should be appointed to administer on my estate, to be by them distributed to such persons, societies or institutions as they may consider most deserving." The language of

the bequest certainly bears great resemblance to that in the will now under consideration. The opinion reviews most of the authorities upon each side of the question involved, and the decision is that a trust was created which because of uncertainty could not be enforced. The real *ratio decidendi* is contained in an observation on p. 213 of the opinion, wherein the court says: "All the property given to them is 'to be by them distributed'; the direction to distribute is as broad as the gift. The property is not 'to be disposed of' at the unqualified discretion of the executors, but is 'to be distributed' according to their judgment of the deserts of the beneficiaries." It is necessary thus to discriminate between the words "distribute" and "dispose of," for had the former been held equivalent to the latter, the court would have been bound by the decision in *Wells* v. *Doane*, 69 Mass. (3 Gray) 201, where the court held that a bequest "to dispose" of certain property "absolutely, as he may deem expedient," carried a beneficial interest. We fail to see the force of this distinction generally, but as the same question arises upon the particular provisions of the will in the present case, we will not here pursue the discussion. In *Minot* v. *Attorney General*, 189 Mass. 176, 75 N. E. 149, there was a devise of a residue to executors, survivor, or whomsoever might lawfully have the execution of the will "to charitable or worthy objects, or such as I may designate during my lifetime, and particularly for the purpose of giving to any relative of mine, whom without apparent reason I may have overlooked, such sum as may seem to them or him under all the circumstances fitting, suitable and proper," but further with "full discretion in the matter of the distribution of said residue, and shall not be under any legal accountability or subject to any trust. . . ." The court very properly held, in view of the bequest to such objects as might

be designated by the testator during his lifetime, or for the benefit of relatives whom he might have omitted to give anything in the will, that despite his words of exceptional reliance upon the discretion of his executors and his relieving them from accountability, he had still created a precatory trust, void for uncertainty. We fail to see how this decision in any way controls the instant case. In *Seefried* v. *Clarke,* 113 Va. 365, 74 S. E. 204, testatrix gave all of her estate to her husband in fee "with one simple request, that the said estate be divided with my children, or its equivalents, as his better judgment may direct." The court held that the bequest created a precatory trust, and that while some discretion might have been reposed by the bequest in the husband as to the shares of the different children, yet as he had not exercised such a discretion, but had broken the trust by conveying the greater part of the property to one child, leaving the other children practically unprovided for, and then had died intestate, all of the children should share the residue equally. This case does not, in its facts or in the reasoning of the opinion, furnish any support for these defendants in the present case. In *General Clergy Relief Fund* v. *Sharpe,* 43 App. Cas. D. C. 126, the testatrix gave the residue of her estate to her executors "or unto the survivor, and I request my said executors, or the survivor of them, to distribute such residue of my estate among such persons as my said executors, or the survivor of them, shall deem proper." Upon consideration of the whole will, including the fact that Sharpe, one of the executors, was not related to the decedent, and the fact that each of the three executors had had a legacy of $2,500 in full of services as such executors, and giving some weight to the use of the word "request," the court held that the executors did not take beneficially, and that the gift

created a trust void for uncertainty. While the facts just referred to might differentiate the will in this case from the one in the case before us, this case on the whole squarely sustains the contention of these defendants.

Passing to the cases cited by the opposing group of defendants including those named as executors together with Elisabeth Gilman, whom for brevity we will designate as executor defendants, we shall apply the rule heretofore followed of specially considering only those cases which approximate closely the testamentary provisions involved in the Lane will. This will remove from special consideration the following cases: *Dawson* v. *Clark,* 15 Ves. Jr. 409 (executors took by virtue of law prior to Act of 1830); *Meredith* v. *Heneage,* 1 Sim. 542 (bequest to the testator's wife of the whole estate in fee, "unfettered and unlimited"); *Hughes* v. *Evans,* 13 Sim. 496 (express trust followed by beneficial gift); *Wells* v. *Doane,* 69 Mass. (3 Gray) 201, (favorable but sufficiently noted above); *Williams* v. *Arkle,* L. R. 7 H. L. 306, (direct, unqualified gift to executor); *In re Mason,* 98 N. Y. 527 (direct, unqualified gift to executors); *Greenough* v. *Cass,* 64 N. H. 326 (direct, unqualified gift to G, also appointed executor); *Gallison v. Quinn,* 183 Mass. 241, 66 N. E. 961 (unqualified gift to wife).

The following cases approximate more nearly to the will in the present case, and will be considered more at length. In *Beck's Appeal,* 116 Pa. St. 547, 9 Atl. 942, the bequest is: "I do hereby give and grant unto my executor, hereinafter named, full and unlimited power and authority to appropriate or dispose of all the rest, residue and remainder of my estate, real and personal, or the proceeds arising from the sale thereof, to such objects, persons or institutions as in his discretion shall be best and proper, as I have full confidence

in his judgment, ability and integrity in the premises."
The executor deemed it "best and proper" to name
himself as beneficiary. The court held that he took
an absolute estate. In *Wilmoth* v. *Wilmoth*, 34 W. Va.
426, 12 S. E. 731, the personal estate of the testator
was given to his widow, who was also executrix, "abso-
lutely, to be used by her in any way or manner she may
wish for her own comfort and for the comfort and
benefit of our two children." The court held the es-
tate of the widow to be an absolute fee. The will con-
sidered in *In re Watts' Estate*, 202 Pa. St. 85, 51 Atl.
588, reads: "I also desire the remainder of my estate
to be disposed of in accordance with the judgment and
advice of my executor Wm. Still." The court held
that the executor had power to dispose of the residue
at his discretion. He had "an unlimited and purely
arbitrary power of disposition." In *Courtenay* v.
*Courtenay*, 90 Miss. 181, 43 So. 68, the will gave testa-
tor's wife all of his estate "for her support and that
of my children." Alienation or incumbrance of the
estate was forbidden during the minority of the chil-
dren, and the will proceeds: "After which time my
wife will be at liberty to make such disposition of the
property here bequeathed as she may deem proper
for the use and benefit of my children." Held that an
absolute title became vested in her after the children
became of age. In the case of *In re Tinsley's Will*,
187 Iowa, 23, 174 N. W. 4, the whole of the will con-
sisted of this paragraph: "In case of any serious acci-
dent, after my just debts are paid, I direct that my aunt,
Miss Mary E. Clark, take entire charge of my estate
for disposal as she sees fit." Held that the legatee
took an absolute estate. In *Harvey* v. *Griggs*, 5 Del. Ch.
App. 000, 111 Atl. 437, decided in 1920, there was pre-
sented for construction a will of great resemblance to
the Lane will. The residuary clause is as follows: "All

the rest, residue and remainder of my estate. . . . I direct my executor hereinafter named, and my sister, Mrs. Elizabeth H. Gause to divide and distribute according to their best judgment." The husband of testatrix entitled by law to the personal estate in case of intestacy, claimed this provision created a trust void for uncertainty, as no beneficiaries were named. The court held that the legatees took the residue absolutely and beneficially. In an opinion containing a discriminating review of recent American cases, the court says: "A direction to divide and distribute an estate does not create a trust, if there be no indication at all as to who the beneficiaries are to be, or as to the purpose to be accomplished. This is certainly true where there is a direction to divide and distribute an estate according to the judgment of the persons to whom the direction is given. The word 'trust' is not used, or even a request, recommendation, confidence or hope that the two persons named will apply the property for some specified object, person, or persons, . . . or any other language showing definitely, or by reasonable inference, that the estate was to be used for the benefit of any person other than the two individuals named in the residuary clause. No trust is created unless some beneficial interest is stated, or some object or purpose be designated. . . . The direction to an executor to divide and distribute according to his best judgment does not create a trust based solely on the fact that the direction was to an executor *eo nomine. Paice* v. *Archbishop of Canterbury*, 14 Ves. Jr. 364, . . . where the bequest was to executors for such purposes as they shall 'in their discretion think fit' . . . . Furthermore, a trust is not created where a clear direction or choice is given to act or not to act, especially where the prior dispositions import an absolute or uncontrollable ownership. There being,

then, no trust, the residue is given absolutely to the person who was named as executor and to Elizabeth H. Gause. They were given an unqualified power to dispose of the property constituting the residuary estate, and the conferring of such power is an absolute gift."

The following cases cited in the brief of the executor defendants, but not discussed, we deem worthy of notice. In *Hill* v. *Fiske,* 69 Misc. Rep. (N. Y.) 507, 125 N. Y. Supp. 1026, the court considered a will containing the following residuary bequest: "The balance of my estate to be distributed by executor in his discretion or as may be hereafter mentioned in codicils or written additions to this will." The testatrix never made any codicils or additions to her will. Thomas S. Ryder, named as executor, renounced, and administration *c. t. a.* was had. The court said: "Such a clause confers an absolute power of disposition." The court cites a number of New York cases in support of its holding, and distinguishes *Gross* v. *Moore,* 68 Hun (N. Y.) 412, 22 N. Y. Supp. 1019. The court continues: "The fact that Dr. Ryder renounced as executor does not take the case out of the rule, because the power of disposition, being wholly discretionary, was not annexed to the office of executor, but was given to him as a person, and he might accept and execute it, although he failed to qualify as executor (*Dunning* v. *Ocean Nat. Bank,* 61 N. Y. 497, at page 502, 19 Amer. Rep. 293); nor is the rule inapplicable because the residuary clause did not designate the donee of such discretionary power by name. *Kinnier* v. *Rogers,* 42 N. Y. 531. Dr. Ryder, therefore, took as an individual, and as such had the absolute power of distribution of the residuary estate; he could have given it to any one to whom he saw fit, including himself."

In the following cases of residuary bequests to executors an absolute estate was held to have been given:

*Harned* v. *Wise*, 185 Ky. 60, 214 S. W. 813, bequest to executrix of "entire control and division" of the estate; *Benz* v. *Fabian*, 54 N. J. Eq. 615, bequest to wife of property "to use, occupy or dispose of . . . as she may think proper"; *Manson* v. *Jack* (N. J. Chancery), 62 Atl. Rep. 394, residue left to executor "to be disposed of as he shall think expedient." The much criticised and much defended case of *Gibbs* v. *Rumsey*, 2 Ves. & B. 294, has been cited by the executor defendants, and the brief of the other defendants devotes a section to its demolition; we do not care to enter upon this controversy further than to remark that the case for what it is worth is prime authority for the executor defendants, and that the principal questioning of its authority was made at a time when the English courts were astute to discover a precatory trust in any provision accompanying an absolute gift, a process now frowned upon and discontinued (1 Jarman on Wills, [6th Ed., Bigelow 361; *Colton* v. *Colton*, 127 U. S. 300, 8 Sup. Ct. 1164; *Hess* v. *Singler*, 114 Mass. 56). The case seems again to have come to its own, and is cited with approval in many recent decisions. From the above review of the decisions, it seems that while there is a distinct conflict of authority, the scales clearly preponderate in favor of the executor defendants.

Passing now to cases which have arisen in our own jurisdiction, we note the rule established by the leading case of *Gilbert* v. *Chapin*, 19 Conn. 342, frequently cited and in many jurisdictions, where the residuary bequest was as follows: "After the payment of my just debts, I give, devise and bequeath all of my estate, real and personal, to my wife, Abby H. Gilbert, to her and her heirs forever, recommending to her to give the same to my children, at such time and in such manner as she shall think best." It was held that the wife took absolutely and beneficially. The words relied on to create a

precatory trust were: "recommending to her to give the same to my children at such time and in such manner as she shall think best." The court says that these words created no trust, that is, that they might be rejected so far as in any way qualifying the absolute estate given; yet they are far more precise than the words contained in the Lane will, "to be distributed at their discretion."

The will considered in *Bristol* v: *Bristol*, 53 Conn. 242, 5 Atl. 687, contained a paragraph in which the executrix was authorized and empowered to "disburse and give" from the decedent's estate a sum not exceeding $5,000 "to such worthy . . . objects as she may deem proper." It was held that this provision was void for uncertainty as no beneficiaries were named, and as there was no gift to the executrix but merely a power. In the opinion (LOOMIS, J.) the court says: "Is this a valid gift? It clearly is not a trust. There is no person or object named, or even hinted, as the *cestui que trust.* There is no person who could claim in a court of equity an enforcement of the trust. It is a case where, if the five thousand dollars had been given to the executrix to be disposed of at her pleasure, the law would regard the property given as vested in her, while the direction for its use was merely precatory and of no legal force. In such a case the law regards the legatee as taking the gift absolutely and with no enforceable duty as to its use." It is difficult to claim that the rule laid down in the last two sentences above quoted does not apply to the instant case. It may be noted that the provision of the will and the rule laid down by the court is concerned with an executrix *eo nomine.*

In *Seymour* v. *Sanford*, 86 Conn. 516, 86 Atl. 7, this court enunciated the rule that in order to create a precatory trust there must exist on the part of a testator a clear intent to make his expectation imperative upon

the donee; that the subject-matter of the expectation must be certain, and the object of testator's bounty certain. There existed in this case, the court held, "an uncertainty indicative of the absence of an intention to create a trust" because there was disclosed there an uncertainty in the object to be benefited and the subject to be affected." It is claimed, and we think justly, by the executor defendants that the will in the present case does not make the expectation imperative, because no intent is expressed, and because there is an entire uncertainty as to the objects to be benefited.

In *Hughes* v. *Fitzgerald,* 78 Conn. 4, 60 Atl. 694, the testator gave his daughter Mary the residue of his estate in fee "to dispose of as she may deem best for the benefit of my daughters, Mary, Johanna, Elizabeth, or either of them." Mary was made executrix, and there was the further provision "giving her full power and control over my said estate, to do with it as she thinks best." This case is certainly stronger than the instant case in favor of a trust, in that the two other daughters of the testator were mentioned as proper recipients of a portion of the residue, yet the court held that the intent of the will was to give Mary the residue absolutely.

In *Wait* v. *Huntington,* 40 Conn. 9, the will under consideration contained what is commonly known as a construction clause, wherein the testator provided that in case of any doubts or informalities affecting the construction of his will, "that the distribution of my estate shall be made to such persons and associations as my executors shall determine to be my intended legatees and devisees, and their construction of my will shall be binding upon all parties interested." In sustaining the power to act under this clause, the court proceeds upon the broad ground thus stated: "It is familiar law that a testator may confer on executors and on others absolute power of appointment and disposition over his property."

By the course of decision in this State, as well as the weight of authority in other jurisdictions heretofore referred to, we are led to the conclusion that the provisions of the Lane will under examination are adequate to create in the executors an absolute and beneficial estate, unless such an interpretation is precluded by the general scheme and object of the will, which we will now consider.

At the time of making her last will the testatrix was one of two survivors of her generation, of a large family, and just previous to her death the sole survivor. She was eighty years of age when she made this will, and eighty-three at her death. She had resided in the homestead at Norwichtown for sixty years, at first with her mother and sisters, and at the time of executing her will she lived there with her brother, William C. Gilman. As appears more at large in the statement of facts, she had for many years dispensed hospitality there to all of her family, and the old home had been a gathering place for them. Her sister Emily, cotenant with her for many years, had in her will (Exhibit C of the finding of facts) provided that after the death of Louisa G. Lane, her brother William, and her nephews George H. Gilman and Francis Gilman, sons of William, should enjoy successive life estates in this real property with remainder to a corporation as a neighborhood house, but with a further provision that any of the descendants of her mother and father might occupy the premises at a very moderate rent. Louisa G. Lane made the same provision in a prior will (Exhibit H of the finding) as regards successive life estates in this real property, and had also given William a life estate in all of the residue of her property, and had provided in the same way for the occupancy by other members of the family at a moderate rent. The same provisions are contained in the draft-will prepared according to her instructions

but never executed (Exhibit I of the finding). She had for some years prior to 1919 contributed to the support of her niece Caroline T. Gilman and Francis Gilman. In her prior will the eventual residue of her estate was left to be equally divided between her nephews and nieces, and the same provision occurs in the draft, Exhibit I. Not until her last will was her residuary disposition of her estate changed by leaving it to her executors for distribution. From all of these facts there emerges a very evident desire to keep up the continuity of her estate and particularly of the family homestead, and this latter object could manifestly only be effected by some considerable appropriation of income from her personalty. It is not unlikely that she also desired the continuance of pecuniary aid to Caroline and Francis. It is fairly inferable that between the date of her prior will and that of the instrument she finally executed,— while as to the pecuniary legacies and the provisions in trust and otherwise for members of the Lane (her husband's) family, her desires remained the same, and while she evidently wished to make the same remembrances to her nephews and nieces,— she had altered her plan with reference to the disposal of the residue of her estate after the death of her brother William. The draft-will, Exhibit I, was drawn from her instructions, and it differs from the will she finally executed in no essential particular, except the recasting of the residuary provisions. In respect to these latter, as she evidently no longer contemplated an equal division of the residue of her estate equally among her nephews and nieces, she might have made an unequal division, in accordance with her views of their necessities or deserts, but this she was evidently not prepared to do. There remained for her the alternative of establishing a formal trust with definite provisions, or of giving the whole absolutely to some person or persons, trusting that in

that way her desires would be carried out more satisfactorily than by the specific provisions of a trust. It may well be that at her advanced age she realized her inability to foresee changed conditions likely to happen in the near future, and that she felt more reliance upon the judgment and discretion of persons who would from long intercourse have a general acquaintance with her desires and ideas, and adapt the disposition of her estate to the condition of affairs obtaining after the end of the life estate of her brother, which might not occur for some little time, and also keep her estate together for such time as might be thought expedient with respect to objects above referred to. That she had in mind the preservation of a continuity in this regard, is evidenced by the provisions of her last prior will and of the draft, Exhibit I, wherein she provided for successive life estates in the homestead to her nephews George H. Gilman and Francis Gilman, and also further provided that after the termination of the life estates set up, any descendant of her father and mother might occupy the house at a very moderate rent. Just how this latter provision could have been carried out does not concern us, but it is prime evidence of the testatrix's intent.

In rearranging her dispositions she had the background of the wills of her two sisters, of her uncle, her prior will and the draft afterward prepared under her instruction and not executed. In this connection it may be taken for granted that she had received considerable legal advice in the past, and had acquired a considerable amount of accurate knowledge with reference to testamentary affairs and of the course of administration of estates. Without doubt she was familiar with the form and requisites of an express trust, as she created such in each of her wills and in her draft-will. She evidently chose the method adopted by her uncle, of giving an absolute fee and trusting to the donee

to make a disposition of her estate in general accord with her desires and preferences, as they might have acquired by more or less definite instruction, or by acquaintance with her views derived from long and familiar intercourse, and also having regard to changed conditions existing after her death, which she was unable to forecast. Three of her executors lived in Norwich and the fourth was her nephew and legal adviser. Accordingly we find her giving an absolute estate to her executors and added to the bequest the words, "to be distributed at their discretion." In the next article of the will she named the executors, and added, "or whichever shall qualify and the survivors of them, as and for the executors of this my last will and testament." There is nothing peculiar in the words just quoted. It is an ordinary conveyancing phrase to avoid any question of power where some executor does not qualify, or where he does not survive the full execution of the will. So far as it has any bearing upon the general construction of the will, it tends to personalize the gift. William C. Gilman had a life estate to endure perhaps some time; that he should be an executor during the period of that estate was entirely proper; but in providing for the distribution of the final residue, the testatrix knew that it would be accomplished by the agency of survivors.

Five of the defendants, including two grandnephews, claim that by the addition of the words, "to be distributed at their discretion," a precatory trust is grafted upon the prior gift which is in terms absolute. That such should be the case, as we have seen from our examination of the authorities, it is necessary that the acts and judgment of the executors be in some way controlled, and that the final result of their administration should reflect the intent and will of the testatrix and not their own, as to objects and beneficiaries. These

defendants say in effect that there is an intent manifested by the testatrix to do this thing, inoperative because vague and uncertain; that a trust was born instantly to die, because the legal environment precluded its survival. Such a construction should not be given to the provision "unless imperatively compelled. . . . It is presumed that the testator intended to make a legal disposition of his estate, and not a void or illegal one. Intestacy is what he never intended or contemplated. It is the duty of the court to give to the language used such construction as will make the instrument or limitation legal and valid, if it can be done in harmony with well-settled rules, with the manifest intent, and adjudicated cases, rather than such construction as will render them illegal and nugatory." *Du Bois* v. *Ray*, 35 N. Y. 162. "Where it can be done without violence to the intention of the testator, that one of two possible constructions will be given to a clause which will sustain the intended devise rather than the one that will defeat it." *Roe* v. *Vingut*, 117 N. Y. 204, 212, 22 N. E. 933; *Matter of Conger*, 81 N. Y. App. Div. 493, 497, 80 N. Y. Supp. 933. To the same effect see *Woodruff* v. *Marsh*, 63 Conn. 125, 136, 26 Atl. 846; *Wolfe* v. *Hatheway*, 81 Conn. 181, 185, 70 Atl. 645; *Nicoll* v. *Irby*, 83 Conn. 530, 534, 77 Atl. 957; *Bridgeport Trust Co.* v. *Parker*, 97 Conn. 245, 249, 116 Atl. 182. In *Smith* v. *Edwards*, 88 N. Y. 92, 102, considering the question whether an illegal trust was created by the language used in the will, the court said: "While, in the present case, no trust was created in direct words by the language of the will, it must be conceded that its provisions plainly permit such a construction; but that is not to be adopted where the trust raised from the general language and apparent intention would be invalid, for there is no such an anomaly in the law as a trust raised by

construction only to be destroyed at the moment of its creation."

But there is, in the provision under consideration, a full discretion annexed to the absolute gift, either to act or not to act; and where this is the case no trust by implication can arise. The provision for distribution in no way limits the absolute estate, and persons possessed of such an estate may distribute it; a distribution of some sort, is an inherent element in ownership.

The fallacy of the argument of these defendants is their confusion of legal and formal intent, with desire and expectation. The testatrix had a legal and formal intent—to create an absolute and beneficial estate in her executors. She also doubtless had expectations and desires which could best be effected through the free, unfettered and discretionary action of her executors. She parted intentionally and deliberately with the absolute and definite control which she might have retained by a formal and specific trust, in order that her real desires and expectations might be the better effectuated, conditioned as these latter evidently might be by events happening after her death, which in her lifetime she could not anticipate. But this class of defendants say that the provision for distribution, if it be given any force, must in a precatory manner limit the legacy, else why was it inserted. We think that the explanation is plain upon the surface. The testatrix had adopted as on the whole preferable, the model of her uncle's will containing an absolute bequest, but connected with certain wishes communicated to the three legatees of a general nature, but largely affected by the exercise of their discretion. He gave a reason that formal trusts were often not clear in their construction, and that burdensome litigation might result. This reasoning evidently commended itself to

the judgment of the testatrix. She gave an absolute estate, and then by way of emphasis added the words as to distribution. That she intended the words to be any limitation of the power or estate of the executors is not borne out by the general scheme of the will or such surrounding circumstances as appear in the finding. In *Cheney* v. *Plumb*, 79 Wis. 602, 48 N. W. 668, the will considered contained a bequest as follows: "When I have done with my property, I want John R. Cheney and his wife to pay all my debts and collect my dues, and dispose of my things as they think best, only I want [then follow certain legacies]; and the remainder to keep and dispose of as they think best." Counsel for the next of kin contended that the words following the word "remainder" in the clause above quoted, modified the admittedly absolute gift conferred by the word "keep," and established a trust inoperative for vagueness. The court held otherwise, and in the opinion it said: "Of course, if the remainder was given them absolutely, that would carry as an incident the *jus disponendi*, but an illiterate person might employ more words than were necessary to express her intention." The tendency adverted to by the court is not confined to illiterates, nor to women. Nearly all persons are prone to make by way of emphasis or explanation to any statement unnecessary additions, to paint the lily, and to make plainer what is already entirely plain.

The argument that the testatrix could not have intended to give outright the residue of her property to three persons to the exclusion of her other relatives of the same degree and for whom she felt the same affectionate regard, is many times reiterated, but the assumption that because they could keep it they would, is certainly not complimentary to the sagacity and discernment of the testatrix, nor in accord with the judgment

and opinion which an intelligent and unbiased outsider would form from reading the will in the light of the collateral matter contained in the finding. To furnish any degree of plausibility to their claim, these defendants must find something in the word "distributed" which by its technical force will operate to limit the absolute gift to the executors, and their plenary power of disposal. Had the words used been "divide," or "dispose of," or "apply," their contention, as we have seen, would have slight support from the authority of similar cases. The words "distribute" or "distributed" are in familiar use; they are not recognized as terms of art in ordinary use, although when used in connection with the settlement of estates, they acquire a more restricted and technical meaning. That they are in any given case so employed, is a question to be answered by the occasion of their use in any particular connection. "The word 'distributed' is not a technical word in conveyancing." *In re Dunphy's Estate*, 147 Cal. 95, 100, 101, 81 Pac. 315; *In re Heberle's Estate*, 153 Cal. 275, 277, 95 Pac. 41; 2 Words & Phrases (2d Series) 88. We have, however, another use by the testatrix of the word "distributed," which indicates its meaning to her. Her will, her prior will, and the draft-will, Exhibit I, all contain the provision: "I leave my clothing," etc., "to my niece Caroline T. Gilman, to be distributed by her among my friends." In this provision the word can only mean "divide" or "dispose of," and clearly has no analogy to the technical use in connection with a decree of distribution. We are not called on to construe the effect of the provision last quoted, but only instance it as showing the meaning which the testatrix attached to it whenever used by her.

As we have said, the ordinary meaning which would be placed upon this provision when read by an intelligent person, would be that the testatrix intended to give

the residue of her estate to the persons named as executors, or such of them as might qualify or survive, to be by them disposed of at their absolute discretion, and that such was her clear intent.   This intent must prevail unless definitely controlled otherwise by some legal rule or by the general intent of the will, read in the light of its context and the collateral facts found by the Superior Court.   We find nothing in the case to show that it was so controlled, and are constrained to hold that the executors of the will take an absolute and beneficial interest in the residue of the estate, and that no trust has been created.

The Superior Court is advised that of the questions propounded for advice, question "a" should be answered in the affirmative, and questions "b" and "c" in the negative.   The above answers dispose of question "d."

In this opinion the other judges concurred.